BENEDICT ROYS, administrator of ELIHU ROYS, *v.* LYMAN ROYS.

It was the object of the 68th section of the probate act of 1821, to provide a remedy for the executor or administrator, in case of an embezzlement or alienation of the goods of the deceased, and to take away the right of a creditor, at common law, of charging the person guilty of the embezzlement or alienation as executor, *de son tort*

The general words, "and shall in no other way be liable therefor," should be restrained in their operation to that effect, and should not take away the common law right of suing in trespass or trover.

To subject a person to the penalty under the 68th section, he must have acted from a *wrong motive*, and *mala fide*, and is entitled to have the case made out against him by *full proof.*

TRESPASS on the case against the defendant for alienating and embezzling the following goods of the plaintiff's intestate, prior to the granting of letters of administration to the plaintiff by the probate court, viz :—one barrel of pork, one barrel of bacon, one barrel of New England rum, four hundred pounds of cod fish, half a barrel of pickled herrings, one gig harness, one sleigh harness, one rifle gun, two bags of shot, and two kegs of nails.

Plea, not guilty, and trial by jury.

The action was brought upon the sixty-eighth section of the probate act of 1821, (Comp. Statute, p. 347,) which is, in substance, as follows :—If any person, before the granting of letters testamentary, or of administration, on any testate or intestate estate, shall embezzle or alienate any of the moneys, goods or chattels of such estate, such person shall stand chargeable and be liable to the action of the executors or administrators of such estate, to double the amount or value of the property so embezzled or alienated,—to be recovered for the benefit of such estate, and shall in no other way be liable therefor.

On the trial, in the county court, the plaintiff introduced testimony to prove the following facts : The property, sued for, came into the hands of defendant sometime in January, 1837, under the following circumstances. Elihu Roys and defendant were brothers. The former, at that time, residing in Boston, Mass., proposed to remove to Northfield, Vermont, and, with that view, purchased the house in which defendant then resided in Northfield, but which he did not own. The defendant, and another brother of said Elihu, at his request, went to Boston, at the time, and moved up the goods. It was then expected that said Elihu would soon follow. He was, however, soon taken ill, and died on the 28th of March, 1837. On the 29th of December, 1837, the plaintiff was appointed administrator of the goods and estate of the deceased, within this state. At the time of the appraisal, which was soon afterwards, the defendant was called upon for the goods mentioned in the declaration, and other goods of a similar description, which were all put into his hands by the deceased, at the same time. The defendant produced part of a barrel of herrings, and said he had disposed of the others, amounting to about half a barrel ; that he had used some of the nails out of one of the kegs about the house, and had sold some ; that the pork, bacon, rum and codfish were gone, and he 'expected to account for them. At the time the commissioners sat, the defendant presented a claim for transporting these goods from Boston, but did not insist upon its allowance. In the summer of 1837, the defendant put the gig harness into the hands of one Gould to sell, and, about that time, he showed to one Staples a gun which he said his brother in Boston gave him, and afterwards said he had sold the gun to one Mc Clure.

The defendant, on his part, gave in evidence the deposition of David J. Wood, and a bill of sale, tending to show that he bought the goods in question of his brother during his life time ; also the deposition of Eliza S. Roys, the widow of said Elihu, (which plaintiff objected to on that account, and the court overruled the objection,) tending to prove the same facts.

The plaintiff offered testimony tending to show that said Eliza S. Roys had made statements out of court wholly inconsistent with the material statements in her deposition,

which was objected to by defendant, but admitted by the court.

The defendant requested the court to charge the jury that there was no testimony in the case, tending to show that he had alienated or embezzled any part of the property claimed, between the time of the decease of said Elihu and the granting of administration upon his estate, and that this action was for a penalty, and unless the plaintiff had made out his case, beyond a rational doubt, he could not recover.

The court declined so to charge, and did, among other things, in substance, charge the jury that it was necessary, in this case, for the plaintiff to prove, to their satisfaction, that the defendant did, between the time of the decease of the said Elihu and the granting of administration upon his estate, embezzle or alienate some portion of the property sued for, fully explaining the terms " embezzle and alienate" in such a manner as was not objected to by the defendant;—that if they were satisfied of the embezzlement or alienation, the plaintiff was not bound to prove the precise time, by direct or positive testimony, but this might be inferred from all the testimony in the case ; that they were at liberty to consider the comparative length of time the property was in the hands of the defendant before and after the decease of the intestate, and that defendant had not attempted to show at what time he did dispose of it, or in what manner, and his declarations upon the subject, and, from all the testimony in the case, determine at what time the embezzlement or alienation did take place ; but they could not .find the defendant liable for any portion of the property, unless they were satisfied the embezzlement or alienation took place between the time of the decease and the granting letters of administration ; and, for that portion, if any, they would return a verdict for double the value of the property ;—and the court further charged that the action was not strictly penal, and that the plaintiff would be entitled to recover if he proved his case to their reasonable satisfaction.

The jury returned a verdict for the plaintiff, and the court adjudged that the cause of action arose from the wilful and malicious act of the defendant, and the defendant excepted to the charge and decisions of the county court.

*L. B. Peck* and *H. Carpenter,* for defendant.

1. We insist that the defendant was entitled to the instructions to the jury, as requested, with regard to the *quantum* of proof. The statute upon which the action is founded is clearly *penal,* as to one half the sum recovered, and perhaps *remedial* as to the other.

It declares that the party shall stand chargeable, and be liable to the action of the executors or administrators, to *double* the amount or value of the property embezzled. It would seem, from analogous cases, that a moiety of the damages are given as a *penalty.* *Hubbard* v. *Gale,* 3 Vt. R. 266. *White* v. *Comstock,* 6 id. 405. *Town of .Calais* v. *Hall,* 11 id. 494. *Ward* v. *Snell,* 1 H. Bl. 10. *Williams* v. *E. I. Company,* 3 East, 193. 2 Bl. Com. 267. B. N. P. 298. Esp. on penal actions, 1, 2, 5, 7. *Warren et al.* v. *Doolittle et al.* 5 Cowen, 676.

2. The defendant being lawfully in possession of the property, before the death of the intestate, and claiming to be the owner, is not liable in this action. Com. Dig. Administrator, C. 2. p. 502. Dyer, 166, 8. 5 Co. 3, 4, a. *Femings* v. *Jarrat,* 1 Esp. Cas. 355.

*J. L. Buck,* for plaintiff.

1. The statute, on which this action is brought, provides a remedy for an administrator, and takes away the common law remedy against the defendant, as executor *de son tort,* and, in fact, all other remedy, and notwithstanding it gives double the value of the property, it is not a penal statute, but merely remedial. *Hubbard* v. *Gale,* 3 Vt. R. 266.

2. If the statute is only remedial, there can be no doubt but a preponderance of testimony would be sufficient to entitle the plaintiff to recover, and the charge of the court goes as far, certainly, as if the court had said a preponderance of testimony would be sufficient for the plaintiff's purpose.

Again, if the statute is only remedial, no more or stronger proof would be required than in an action of debt or assumpsit.

The opinion of the court was delivered by

WASHINGTON,
March,
1841.

Roys
v.
Roys.

BENNETT, J.—It is a principle of the common law that if a person, without any authority from the deceased, or the ordinary, does such acts as belong to the office of an executor or administrator, where there is no rightful executor or administrator, he makes himself an executor in his own wrong, and subjects himself to all the hazards and liabilities growing out of such an executorship. He is not only liable to the rightful executor or administrator in an action of trespass or trover, but may be sued as executor by the creditors of the deceased ; and there are cases where an executor *de son tort*, upon the plea of *ne unques executor*, has been held liable for large debts, when only a trivial amount of property came into his possession. The sixty-eighth section of the probate act of 1821, provides, that, if before granting letters testamentary, or of administration, any person shall embezzle, or alienate any of the goods and chattels or moneys of such estate, such person shall be liable to double the amount or value of the property so embezzled or alienated, in an action brought by the executor or administrator, to be recovered for the benefit of the estate ; and it adds, " and shall in no other way or manner be liable therefor."

This statute provides a remedy for the executor or administrator, and takes away the right, at common law, of the creditor to sue the person, as executor, who has made himself chargeable as executor *de son tort*. The statute enacts what shall be the consequence of those acts, which, at common law, would constitute a person an executor in his own wrong. He is liable to double the amount of the property embezzled or alienated, to the rightful representative, for the benefit of the estate, and though the words, " and shall in no other way or manner be liable therefor," are exceedingly broad ; yet, it is manifest that the only object which the legislature had in view, was to abolish the common law right of the creditors, charging a person as executor *in his own wrong*, for those acts which constituted him such at common law.

It was thought a sufficient protection against the embezzlement of the goods of a deceased person, to subject the wrongdoer to a forfeiture of twice the amount embezzled, without exposing him to the consequences of an executor-

WASHINGTON,
March,
1841.

Roys
v.
Roys.

ship *in his own wrong ;* and we think the general words in the statute should be restrained in their operation to that effect, and not to take away from the rightful executor or administrator the common law right of suing the wrongdoer in trespass or trover.

At common law, if the party came into the possession of the property by color of legal title, he could not be charged, it is said, as executor " *de son tort*," though he should be unable to establish such title completely in every respect. *Femings* v. *Jarrat*, 1 Esp. R. 335. 3 Bac. Ab. 21. The rightful executor or administrator, in such case, might have trespass or trover. The statute, subjecting the party to pay double the value of the property, is highly penal in its consequences, and should not be applied to a case where he acted in good faith, under color of legal right, supposing he had good title, though it might turn out otherwise. To subject the defendant to the penalty, he must have acted from a *wrong motive*, and *mala fide*. If it is otherwise, the representative of the deceased must be satisfied with his action of trespass or trover. Under this view of the statute, the parties are entitled to have their rights tried, and the question as to the *motive and intent* of the defendant should have been distinctly presented to the consideration of the jury.

It is also true, that, under this view of the subject, as the plaintiff elected to go for the penalty under the statute, when he might have brought his common law action, he must be subjected to the same rule of evidence that obtains in other actions on penal statutes. He must have made what is called *full proof*, and was not entitled to recover on merely a preponderance of testimony. *Brooks* v. *Clayes & Morse*, 11 Vt. R. 37. For these reasons, we think the judgment of the county court must be reversed and the cause remanded for a new trial.