## COCKE v. MONTGOMERY *et al.*

| | |
|---|---|
| 75 | 259 |
| 101 | 659 |
| 75 | 259 |
| 107 | 62 |
| 75 | 259 |
| 138 | 360 |

1. **Contracts: MENTAL INCAPACITY: EVIDENCE.** The evidence in this case (see opinion) *held* not to support the claim of plaintiff that her husband, at the time he made the chattel mortgages in question, had not sufficient mental capacity to transact such business.

2. **Chattel Mortgage: DEATH OF MORTGAGOR: METHOD OF COLLECTING SECURED DEBT.** After the death of a mortgagor of chattels, the mortgagee may, upon breach of the conditions of the mortgage, proceed to foreclose by notice and sale under the statute, just as he might have done had the mortgagor survived, and he is not required to file his claim and submit to the slow process of administration to adjust priorities and determine his rights.

3.  ———— : OF STOCK OF DRUGS : FORECLOSURE SALE BY ONE NOT A
PHARMACIST. It would seem that the law providing that only reg-
istered pharmacists shall sell drugs has no reference to stocks of
drugs sold under foreclosure or judicial sales.·

*Appeal from Warren District Court.*—HON. O. B.
AYRES, Judge.

FILED, SEPTEMBER 10, 1888.

. THIS is an action in equity, by which plaintiff
seeks to set aside and annul certain mortgages upon a
stock of drugs made by her deceased husband to certain
of his creditors, upon the ground that at the time he
executed the mortgages he was mentally incapable of
entering into any contract or transacting any business.
There were two cases involving the same questions.
They were tried in the district court upon the same evi-
dence, and are submitted to this court in the same
manner. The court below entered decrees dismissing
the petitions, and plaintiff appeals.

*J. E. Williamson* and *L. Todhunter*, for appellant.

*H. McNeil* and *Powell & McGarry*, for appellees.

ROTHROCK, J.—I. It appears from the evidence
that A. R. Cocke, the intestate, was for some years
engaged in the drug business. He owned a

1. CONTRACTS : small stock of goods, and was regarded as a
mental inca-
pacity ; evi- good business man. Some time before his
dence.
death he was injured by falling from a
wagon, and he became feeble and emaciated, and· grad-
ually failed until his death. It does not appear that he
had any affection of the brain, but his mental faculties
became weak as his physical powers failed. He was
justly indebted to the defendants. He sent for one of
them, and proposed to secure his claim by a mortgage
upon his stock of goods, and the mortgage was given.
The other defendants requested him to secure their
claims by mortgage, which was done. There is quite a

volume of testimony of witnesses as to the mental capacity of the deceased when these mortgages were made. An examination of this evidence leaves but little doubt that the deceased was capable of contracting when he executed the mortgages, and that no advantage was taken of him. Indeed, there can be no other rational conclusion from the evidence. It is true, there is a conflict in the opinions of the witnesses upon the question of mental capacity. But the conflict is mainly in the opinions. When the facts are examined, there is but little ground for controversy upon the question.

II. Some time after the mortgages were given Cocke died, and the plaintiff, who is his widow, was appointed administratrix of his estate. The defendant mortgagees placed their mortgages in the hands of the defendant Montgomery, sheriff, who took possession of the goods, and advertised them for sale to satisfy the mortgages. Plaintiff commenced these suits, and enjoined the sale, and, after the issues were made up, by agreement of the parties, one Buffington, a pharmacist, was selected to sell the stock of drugs, and deposit the money arising from the sale with the clerk of the court. Buffington afterwards sold the stock, and deposited the money as required, and on final hearing the same was ordered to be paid to the mortgagees. It appears that the goods greatly depreciated in value, caused by the delay. But if, as we have found, the mortgages were valid liens, the delay was caused by the plaintiff's interfering with a sale, by these injunction suits. But the plaintiff claims that the defendants had no legal right to assert their liens by seizing the goods under their mortgages and foreclosing by a sale. It is claimed by appellant that the claims of the mortgagees should have been filed as required by section 2408 of the Code ; and that the law does not authorize the foreclosure of a chattel mortgage by notice and sale, but that the claims should be filed and take such priority of lien as the court may determine in the regular course of administration. In other words, the claim is that the

2. CHATTEL mortgage: death of mortgagor: method of collecting secured debt.

personal estate is under the control of the administrator for the purpose of selling the same, and paying the debts under the direction of the court; and mortgagees of the personal estate have no lawful right to interfere by seizing the property under their mortgages. The ready answer to this proposition is that the mortgagor's contract did not terminate with his death. Under section 3307 of the Code, and subsequent sections, it was the right of the mortgagees to foreclose by notice and sale. This right did not cease with the death of the mortgagor. There is no provision of the statute which requires the mortgagee of chattels to file his claim, and await the slow process of administration to adjust priorities and determine his rights. If his foreclosure is wrongful, or the debt has been paid, or, as is claimed in the case at bar, the mortgage is invalid, the administrator has ample authority for protecting the estate by injunction, and the transfer of the foreclosure to the district court, as provided in section 3317 of the Code.

III. It is further claimed that, as the mortgaged goods consisted largely of drugs, poisons and medicines, they cannot be sold at public indiscriminate sale, but can be sold only by registered pharmacists. It is provided by section 2, chapter 83, Acts 1886, that "pharmacists, whose certificates of registration are in full force and effect, shall have the sole right to keep and sell, under such regulations as have been or may be established from time to time by the commissioners of pharmacy, all medicines and poisons, including intoxicating liquors, only for the actual necessities of medicines." It does not appear that there were any intoxicating liquors in the stock of goods. But appellant's counsel contend that the medicines and drugs could not be sold by any one but a registered pharmacist, and that the sheriff had no right to proceed with the sale under the mortgage. The position taken by counsel, if entertained, would practically avoid all chattel mortgages of drugs, except in cases where the sheriff who conducts a foreclosure sale is a

3. —— : of stock of drugs: foreclosure sale by one not a pharmacist.

registered pharmacist. It would seem that the law providing that certain qualified persons shall sell this class of property has no reference to sales of stocks of goods under foreclosure or judicial sales. But we need not enter upon the consideration of that question in this case, for it appears that the parties by agreement put the goods in the hands of a registered pharmacist, and that they were sold by him. We think the decree of the district court should be AFFIRMED.