**HODGSON et al. v. HATFIELD, Adm'r.**

No. 15383—Opinion Filed June 16, 1925.

Rehearing Denied Oct. 13, 1925.

**1. Sheriffs and Constables — Liability on Sheriff's Bond—Violation of Duty.**

The sheriff owes a duty to the public in all matters of his office where the public is directly interested, and also a duty to the individual in any matter the individual is directly interested in, and for the violation of either duty, resulting in damages, is liable on his official bond.

**2. Appeal and Error—Review—Conclusiveness of Findings by Jury — Question of Partnership Property.**

The issue as to whether or not the property in controversy is partnership property is for the jury to determine, under proper instructions of the court, and where interrogatories are submitted on this issue for the jury to answer, and they answer the same, and there is competent evidence to sustain the answers, this finding will not be disturbed on appeal.

**3. Executors and Administrators—Liability for Wrongful Disposal of Funds of Decedent Prior to Administration.**

Under section 1220, Comp. St. 1921, any person, whether officer or private citizen, taking possession of money belonging to a deceased person, before an executor or administrator is appointed, and willfully misapplying it, is liable to the executor or administrator for the same as therein provided.

**4. Same—Sufficiency of Instructions.**

The record examined. and held, that the instructions of the court to the jury fairly state the law applicable to the facts in the case, and there was no error in refusing to give the defendants' requested instructions.

(Syllabus by Threadgill, C.)

Commissioners' Opinion, Division No. 3.

Error from District Court, Woods County; Arthur G. Sutton, Judge.

Action by W. F. Hatfield, administrator of the estate of D. A. Pollock, deceased, against Harry H. Hodgson, Sheriff of Woods County, Okla., Harry E. Mason, H. A. Matteson, G. E. Nickel, E. Westling, Fred J. Fash, E. A. Haines and Porter M. Wynn and John Barry, to recover money taken from the deceased by robbery. Judgment for plaintiff, and defendants appeal. Affirmed.

John Barry, for plaintiffs in error.

Gus Hadwiger and W. L. Houts, for defendant in error.

Opinion by THREADGILL, C. This was an action against the sheriff, his bondsmen, and other parties to recover money alleged to have been taken from a prisoner and illegally appropriated.

The facts, according to the record, are substantially as follows:

The plaintiff is the administrator of the estate of D. A. Pollock, deceased; the defendant Harry H. Hodgson was sheriff of Woods county, and defendants Harry E. Mason, H. A. Matteson, G. C. Nickel, E. Westling, Fred Fash, and E. A. Haines were the sheriff's bondsmen; Porter Wynn was the prisoner from whom the money was taken by the sheriff, and John Barry was the attorney representing said Wynn, and to whom the money was paid as a fee for representing him. In September and up to October 7, 1920, the decedent, D. A. Pollock, and defendant, Porter Wynn, were living together in a three-room house in the northeast hills of Woods county, where they were engaged in the illicit business of making and selling whisky. Pollock's home was in Anthony, Kan., where his wife lived and their two children. Wynn and his wife and children lived together and occupied one room of the house out in the said hills, and Pollock, with a mistress, occupied the other room of said house. On October 7, 1920, the two men had an altercation in the kitchen before breakfast. caused by Pollock rebuking Wynn for slapping his wife, or insinuating conduct of Pollock to Wynn's wife. Pollock's mistress became alarmed over the trouble. and requested him to take her at once to Hartner, Kan. They started and tried to go in Pollock's Ford car, but it would not work, and then they proceeded to walk, and intended to go a distance of about

two miles to where their landlord, Ezra Mays, lived, where they expected to get transportation to Hartner, Kan.; when they had walked about a mile and a half and were in about one-half mile from Mays' house, Wynn came up out of a gorge upon them, and pointing a gun at them, commanded them to throw up their hands and to throw upon the ground their pocket books, which they did. Wynn picked up the pocket books and took from Pollock's $500, in five, ten, and twenty dollar bills, and marched them back the way they came, the distance of a mile, then shot Pollock two or three times, which caused his death a few hours later, and Wynn took his family and escaped across the line to Kiowa, Kan., where he was arrested the next day at the railway station, and where he had bought a ticket and was waiting for a train to take him north. They took from his person the money in controversy and turned the same over to the sheriff, defendant in this case, and said sheriff brought him to Alva, and put him in jail, and he was thereafter tried, convicted, and sent to the state penitentiary for manslaughter. Soon after Wynn was placed in jail he employed John Barry, as his attorney, and the sheriff, after consulting the county attorney and being advised that the state did not need the money as evidence, and after advising with the county judge, who acted as the examining magistrate, and who told him he did not know any reason why he should not return the money, delivered it to the attorney, John Barry, at the request of Wynn to pay a part of his fee for representing him. It appears from the record that the sheriff had information that the money had been taken by force from Pollock. After the administrator was appointed he made demand of the sheriff for the money, which being refused, this action was commenced to recover double the amount.

After issues joined the cause was tried to a jury, October 23, 1923, and resulted in a verdict and judgment for plaintiff, and the defendants appeal by petition in error and case-made.

1. They first contend that the sheriff owed no special duties to any individual who might have been the owner of the money that was taken from the prisoner, Wynn.

Defendants say this proposition is supported by the holding in the case of Eberhardt v. Board of County Commissioners, 186 Pac. 492, a Kansas case. We have examined this authority very carefully and it appears that the court holds that where a contractor enters into a contract with the county commissioners and constructs improvements under said contract, without proper notice given as required by statute, that the contract is void, and there is no liability upon the county to pay, and this upon the theory that under a void contract there is no duty owing the individual by the public official, and without a legal contract there is no liability.

The statutory requirements must be complied with in order to fix liability. We cannot see how this holding of the court had any application to the defendant's proposition, that the sheriff of Woods county owed no duty to any person who might be the owner of the money in controversy. The case cited and discussed involved a void contract, and the court, in discussing the duty of public officials, states that they owe a duty to the public where the public interest alone is involved, and they also owe a duty to the individual where the individual interest is involved. In the instant case the sheriff had notice, from parties who knew the facts, that Wynn took about $500 from Pollock by force before he shot him. The next day after the killing the sheriff attended the coroner's inquest at the house of Ezra Mays and heard the testimony of the witnesses as to what took place between the two men in the difficulty. He heard the testimony as to the money taken from Pollock; he also had information as to the amount of money taken from Pollock and about the two pocket books, from parties who seemed to know the facts at the time he went to Kiowa, Kan., as sheriff, to bring the prisoner, Wynn, back to Oklahoma— all this information was sufficient notice to warn him that the money he received, with the prisoner, was claimed by the heirs of Pollock, and that he should take care of it or put it in the way of being taken care of for at least six months, subject to the orders of the court and rights of the owners. The statutes, sections 2944 and 2948, provide a procedure for taking care of and disposing of moneys stolen or embezzled, which are applicable when the defendant is arrested, charged, and tried for the crime, but in a case where there is no arrest and trial for the particular crime, as in case the defendant is killed in flight after the robbery, or is charged and tried only for murder, where the murder follows the robbery, as in the instant case, the procedure provided in above sections is not applicable, still the officer or any other person getting possession of money taken from a prisoner or a thief, with notice of claimants, must hold such money a rea-

sonable length of time subject to the rights of the lawful owners, under the law of bailment. Because the defendant, Wynn, was not charged with robbery and not tried for taking this money from Pollock, would not give the sheriff license to take it from Wynn and dispose of it as he saw fit when he had notice that Pollock's heirs claimed it, and then justify his act by saying the prisoner was not charged with robbery, larceny, or embezzlement at the time he so disposed of the money, although he was charged with murder, and he had notice of the robbery. This would be using the statutes fixing a procedure in certain cases to aid wrongdoing in cases where the procedure is not applicable.

Defendants also cite the case of McPhee v. U. S. Fidelity & Guarantee Company, a Washington case, 100 Pac. 174, where plaintiffs captured some outlaws upon whom a large reward was placed. After capturing them they turned them over to the defendant, sheriff, to be held by him, and, in some manner alleged to be negligence on the part of the sheriff, they escaped, whereupon the plaintiffs brought suit for damages against the sheriff and his bondsmen, and the court held the plaintiff could not recover, because the sheriff owed no direct duty to the plaintiffs to hold the defendants, but his duty, in this particular, was to the public. This holding of the Washington court cannot be applied to this case, because the public had no interest in the money taken by the sheriff, but the heirs of the estate of Pollock were interested, and the sheriff owed his duty to the interested parties. This very case, cited by defendants, calls attention to the fact that the sheriff, as an officer, owes a duty to the public and also a duty to the individual, and we must hold that the rule to be applied to the case at bar is the rule growing out of the official's duty to the individual.

We do not think it can be contended that the sheriff of Woods county was not acting as such officer when he went to Kiowa, Kan., to take into his custody the prisoner, Winn, nor is it reasonable and common sense to say that he took the prisoner into his custody as sheriff and conveyed him to Woods county and landed him in jail, and, at the same time, he did not take the money and pocket books, found on the person of the prisoner, into his custody and convey them to his office in Woods county as sheriff, but only in his individual capacity. In conveying the prisoner to Alva and placing him in jail he was performing his duty as sheriff toward the public and in conveying

the money and pocket books taken from the prisoner to Alva and in taking care of same he owed a duty as sheriff to the individuals interested in the property. Meek v. Tilghman, 55 Okla. 208, 154 Pac. 1190; Stephenson v. Sinclair (Tex.) 36 S. W. 137; Kendall v. Aleshire (Neb.) 45 N. W. 167.

2. The defendants further contend that the plaintiff is not entitled to recover for the reason that the money involved was partnership money and made by Wynn and Pollock in the illicit whisky business. This question was settled by the finding of the jury in answering interrogatories propounded by the defendants for them to answer, in returning their verdict. The questions and answers were as follows:

"Q. Whose money was it which was taken from the defendant Wynn, by the officers of Barber county, Kan.? A. D. A. Pollock. Q. Where was that money delivered to the defendant, Hodgson? A. Kiowa, Kan. Q. To whom did Hodgson deliver that money? A. J. W. Barry."

These answers of the jury are fully sustained by the evidence, which eliminates the question of partnership, and the well known rule is applicable, that the findings of the court or jury, on questions of fact, will not be disturbed on appeal, where there is any competent evidence to support the same.

3. We not only think the sheriff and his bondsmen were liable for the violation of his official duty to the heirs and estate of D. A. Pollock in misappropriating the money, under the facts and circumstances of the case, but that all the defendants were liable, under section 1220, Comp. St. 1921, which provides as follows:

"If any person, before the granting of letters testamentary or of administration, embezzles or alienates any of the money, goods, chattels or effects of a decedent, he is chargeable therewith, and liable to an action by the executor or administrator of the estate, for double the value of the property so embezzled or alienated to be recovered for the benefit of the estate." Litz, Adm'r v. Exchange Bank, 15 Okla. 564, 83 Pac. 790; Aultman & Taylor Mach. Co. v. Fuss, 86 Okla. 168, 207 Pac. 308; Shawnee Nat. Bk. v. Van Zant, 84 Okla. 107, 202 Pac. 285; Masterson v. Union Bank & Trust Co. et al. (Wash.) 150 Pac., 1126; Warren v. Smith (Utah) 100 Pac. 1069.

These and many other authorities give us the general rule stated in 38 Cyc., page 2024 as follows:

"It is well established by numerous authorities that it constitutes a conversion to receive property from one who has no right to part with or dispose of it, and thereafter

to use, sell, or exercise dominion over it, whether with knowledge of the owner's rights with respect to such property or in good faith without any notice whatever of the rights of the owner."

4. Defendants further complain that the court committed error in refusing to give the following requested instruction. involving good faith of the sheriff:

"Gentlemen of the jury, you are further instructed that an officer is only bound to use ordinary care in disposing of money, that may come into his possession, when the ownership of said money is not known to him and that he cannot he held liable to any one after he has in good faith honestly turned it over to some person, although such person was not in fact entitled to the same."

The record discloses that the court in its general charge to the jury covered the question of good faith in paragraph 6, in which he tells the jury, in substance, that if the sheriff disposed of said money by surrendering it to the attorney, John W. Barry, and that prior to said surrender he knew of the claim of Pollock or his estate or from the facts and circumstances as a reasonable and prudent man could have known, then the verdict should be for the plaintiff, otherwise for the defendants. This covered the question of good faith as fully as the requested instruction, and it was for the jury to determine, from all the facts and circumstances, whether or not the sheriff had acted in good faith, in delivering the money to the attorney at the request of the defendant, Wynn, and we do not think there is any merit in the defendants' contention on this point.

5. Defendants further complain that the court erred in refusing to give the following requested instruction, involving the question of the money being the proceeds of an illicit business or unlawful transaction:

"Gentlemen of the jury, you are further instructed that if you find that the money in controversy was the proceeds of an illicit business or transaction, then in that event, you must find for the defendant and it is upon the defendant to prove by a preponderance of the evidence that the money turned over was the proceeds of an illicit business or an unlawful transaction."

There was no error in refusing this instruction, because the action was not based upon a right, the enforcement of which involved an illicit business or unlawful transaction, but upon the right to money, which has the same value regardless of the business or transaction out of which it was accumulated. The jury found that the money belonged to the decedent, Pollock, and it made no difference how he made it; if it was his when he died, it falls to his heirs or estate after his death. The principle applicable is stated in the case of McDonald v. Lund (Wash.) 43 Pac. 348, as follows:

"Where plaintiff and defendant entered into a partnership to conduct an illegal business, which, after its conclusion, leaves undivided profits in the hands of defendant, and it is agreed by them that plaintiff is entitled to a certain portion thereof, which he leaves on deposit with defendant, plaintiff may recover it."

In the body of the opinion the court states:

"This distinction, viz., the difference between suing on or trying to enforce the illegal contract itself, and a suit to recover money which is admitted to be due, although it may have been obtained by prosecuting an illegal enterprise, has always been respected by the courts, from its announcement in the cases we have above cited up to the present time." Citing cases.

The court in its general charge explained all the issues in the case to the jury, and, by common consent, excepted the defendants Wynn and Barry from liability and explained to the jury the relation of the sheriff and his liability as a bailee, and the necessity of reasonable caution on his part to take care of the property that comes into his hands by virtue of his office, where he had knowledge that other persons than the defendant claimed the property, and the court explained the relation of the sheriff's bondsmen to the liability and quoted from the bond, and explained to the jury fully the contentions of both parties to the action, and applied the rules of law applicable to the facts in the case with such simplicity that the jury must have understood their duty in answering the questions propounded to them, as above stated, and in returning a verdict in favor of the plaintiff.

Finding no error in the record, we are of the opinion that the judgment of the trial court should be affirmed.

By the Court: It is so ordered.

Note.—See under (1) 35 Cyc. p. 1900. (2) 4 C. J. p. 853. (3) 24 C. J. 737. (4) 38 Cyc. p. 1711.