**REGIONAL AGRICULTURAL CREDIT CORPORATION OF SPOKANE, WASH., v. CHAPMAN.**

No. 9956.

Circuit Court of Appeals, Ninth Circuit.

June 26, 1942.

Mastin G. White, Sol., of Washington, D. C., Robert K. McConnaughey, Associate Sol., of Kansas City, Mo., Thomas M. Darnall, Chief, Litigation Section, of Washington, D. C., Arthur C. Bernard, of Chicago, Ill., and W. Q. Van Cott and D. Eugene Livingston, both of Salt Lake City, Utah, for appellant.

Raymond E. Dockery and H. Leonard DeKalb, both of Lewistown, Mont., for appellee.

Before WILBUR, DENMAN, and MATHEWS, Circuit Judges.

WILBUR, Circuit Judge.

On December 27, 1933, Simon Douglas borrowed from appellant the sum of $17,000, giving his note for such sum, due December 15, 1934, and as security his chattel mortgage on 5050 head of sheep, twenty-two horses, and certain hay and farm equipment. This obligation was not paid at maturity, and on January 12, 1935, while renewal negotiations were pending, Douglas died. The balance then due was $16,328.48.

Douglas' sole heir having declined to assume the obligation appellant decided to exercise its power of sale under the chattel mortgage, and posted notices thereof as required by that instrument and by the laws of Montana. In addition, it wrote personal letters itemizing the property to be sold, to ten persons whom it thought likely to be interested in bidding. The sale was held on February 5, 1935, at the advertized time and place, and in spite of somewhat inclement weather was attended by about seventy-five people, including at least five substantial bidders. Shortly before bidding began, an attorney and a banker, whose connection with the parties does not appear, informed appellant's auctioneer that it would be illegal to sell the property before the appointment of an administrator or executor of Douglas' estate. Appellant nevertheless proceeded with the sale, and no criticism is made of the manner in which it was conducted. The property was sold among nine buyers for the aggregate sum of $15,002.10.

On April 4, 1935, appellee was appointed administrator of the estate of Simon Douglas; on July 10, 1935, he sued appellant in the Montana state court to recover $46,211.48: twice the alleged value of the security sold less amount due on the note at the time of Douglas' death. This action was predicated upon § 10140 of the Revised Codes of Montana, which provides: "If any person, before the granting of letters testamentary or of administration, embezzles or alienates any of the moneys, goods, chattels, or effects of a decedent, he is charged therewith and liable to an action by the executor or administrator of the estate for double the value of the property so embezzled or alienated, to be recovered for the benefit of the estate."

On petition of appellant, a government-owned corporation, the action was removed to the United States District Court, in conformity with 28 U.S.C.A. § 42, 43 Stat. 941. Appellant cross-complained for the deficiency remaining due on its note. The action was tried without a jury. The trial court found the value of the property sold to have been $17,000; from double this amount were deducted the indebtedness due appellant on the note, with interest, and costs of sale, leaving a balance of $16,633.17. Judgment was given for the plaintiff (appellee) for that sum, and from that judgment this appeal is taken.

Appellant attacks the judgment upon several grounds. We consider first its contention that the code section relied on does not apply to action taken in good faith under claim of right. The Montana court has not passed upon this question but it has considered the similar problem arising under a Montana statute imposing treble damages for conversion of timber. The statute (Comp.St.1887, Div. 1, § 363, now R.C. § 9476) made no reference to malice or bad faith; nevertheless, in McDonald v. Montana Wood Co., 1894, 14 Mont. 88, 35 P. 668, 43 Am.St.Rep. 616, the court held that since the act was highly penal it would not be construed as including action taken in good faith. Appellee seeks to avoid the application of this holding by

asserting that § 10140 was derived from § 116 of the California Probate Act of 1851, p. 462 (St.1850, c. 129, § 117), which, before its adoption by Montana, had been construed by the California court in Jahns v. Nolting, 1866, 29 Cal. 507, as not being penal. This construction appellee claims must be deemed to have been adopted with the act. There are several answers to this proposition.

First, we are referred to no legislative history whilch would justify the conclusion that the Montana statute was derived from that of California. In 1877, when the Montana statute was first enacted, statutes substantially identical in terms were to be found in Oregon (Code of 1862, § 1093), Washington (Act of April 27, 1854, p. 278, § 67), Vermont (Comp.St.1851, c. 50, § 11), Wisconsin (R.S.1858, c. 99, § 10), and perhaps elsewhere. Any. of these may have been the source of the Montana Act.

Second, the language in Jahns v. Nolting, supra, upon which appellee relies, was used with reference to a problem altogether different from that before us, and we believe it sheds no light on how the California court would have viewed the present question. On the contrary, the court in that case defined "alienation" as used in the statute as being the "wrongful conversion of property," and held that the statute created no new right or remedy, but only increased the measure of damages available in enforcement of an existing right. If that be true appellee has no case for the transfer by appellant was not wrongful unless this statute made it so and it cannot be said that a statute which imposes damages for a wrongful transfer thereby makes all transfers wrongful.

Finally, we consider the conclusions reached in other states. The precise question at bar had been passed on in Vermont prior to the adoption of the Montana statute. Roys v. Roys, 1841, 13 Vt. 543 (construing Prob.Act 1821, c. 3, § 68; Comp.St. 1825, c. 44, § 68), and Batchelder v. Tenney, 1855, 27 Vt. 578 (construing Comp. St. c. 50, § 11), both held that the statutory damages were not available against a defendant who acted in good faith. A similar view was expressed in California where the court held, in Beckman v. McKay, 1859, 14 Cal. 250, that Prob.Act, § 116, supra, being penal, would be strictly construed, so as not to include a retention of possession under claim of right. Subsequent cases

have followed the Vermont rule: Springer v. Jenkins, 1906, 47 Or. 502, 84 P. 479 (construing B. & C. Laws, § 1152, Code 1862, § 1093); Jackson v. Lamar, 1912, 67 Wash. 385, 121 P. 857 (construing Rem. & Bal. Code, § 1460, Act April 27, 1854, p. 278, § 67); Merrill v. Comstock, 1913, 154 Wis. 434, 143 N.W. 313 (construing R.S.1898, § 3824); and Delfelder v. Poston, 1930, 42 Wyo. 176, 293 P. 354 (construing Comp.St. 1920, § 6830; St.1890–91, Ch. 70, subc. 12, § 1). Oklahoma apparently stands alone in support of the opposite view. Litz v. Exchange Bank of Alva, 1905, 15 Okl. 564, 83 P. 790 (construing Wilson's Rev. & Ann.St. 1903, § 1603; St.1890, § 1371); Aultman & Taylor Machinery Co. v. Fuss, 1922, 86 Okl. 168, 207 P. 308 (construing R.L.1910, § 6324); Sauls v. Whitman, 1935, 171 Okl. 113, 42 P.2d 275 (construing St.1931, § 1219 [58 O.S.1941 § 292]).

The doctrine announced by the Montana court in McDonald v. Montana Wood Co., supra, appears to us to be squarely applicable to the statute now before us, and agrees with that construction of such statutes which was unanimous when the Montana act was adopted and has since been departed from by only one state.

We conclude that § 10140 of the Revised Codes of Montana does not subject to liability for double the value of property alienated, one who acted in good faith, without intent to deprive the estate of the value of such property. In the case at bar, the trial court made no finding that appellant acted in bad faith, nor does the record contain evidence which would have supported such a finding. It follows that the court erred in holding appellant subject to the terms of the statute.

There remains the question of whether appellant's power of sale survived the mortgagor's death, so as to permit of its exercise thereafter. Appellee has argued at some length that a mere lien, such as was here involved, as distinguished from a transfer of title as security is not such an "interest" as, coupled with a power of sale, will enable the latter to survive the death of the debtor. The authorities are almost unanimous to the contrary (56 A.L.R. 224), and on oral argument appellee conceded that the sale was valid unless inhibited by § 10140.

Recovery should have been denied to appellee on his complaint, and allowed to

438

appellant on its cross-complaint. The judgment is reversed and the cause remanded to the trial court with instructions to proceed in accordance herewith.

Judgment reversed.