**MORELAND, Admr., Plaintiff v. ROBERTS, Defendant.**

Common Pleas Court, Jefferson County.

No. 34510. Decided December 27, 1943.

Lee Van Tilburg, Steubenville, and Stuart B. Moreland, Steubenville, for plaintiff.

William J. Weinman, Steubenville, for defendant.

## OPINION

By HOOPER, J.

This is an action in replevin wherein the plaintiff says that he is the duly appointed, qualified and acting administrator of the estate of Jack Whelan, deceased; that said Jack Whelan, at the time of his death, was the owner of a 1941 Buick automobile. Plaintiff further avers that the defendant wrongfully detained said automobile and plaintiff prays for the recovery of possession of said automobile.

The defendant, in her answer, admits that the plaintiff is the duly appointed, qualified and acting administrator as alleged in plaintiff's petition. Further answering the defendant

denies that she wrongfully detained from the plaintiff said automobile, and further avers that on the 24th day of February, 1942, she purchased from The Brandt Motor Company of Steubenville, Ohio, said automobile for the sum of $461.85 and received a certificate of title for same and that by reason thereof she has been the true and lawful owner of said automobile since February 24, 1942, and prays that the petition of plaintiff be dismissed.

The undisputed evidence pertinent to a determination of this case is as follows:

First: That Jack Whelan in his lifetime purchased the automobile in question from The Brandt Motor Company paying part of the purchase price and leaving a deferred balance to be paid in fifteen monthly installments, the first installment being due August 16, 1941. Said deferred payments were secured by a chattel mortgage on said automobile dated the 17th day of July, 1941.

Second: That said mortgage contained the following provision designated as number 8 in said mortgage, to-wit:

"If the mortgagor default in complying with the terms hereof, or the mortgagee deems the above property in danger of misuse or confiscation, the mortgagee may take immediate possession of said property without demand, including any equipment or accessories thereto, possession by the mortgagor after default being unlawful; and for this purpose the mortgagee may enter upon the premises where said property may be and remove same. Mortgagee may take possession of any other property in the above described motor vehicle, at the time of repossession, and hold the same temporarily for the mortgagor without any responsibility or liability on the part of the mortgagee. The mortgagee may resell said property, so retaken, at public or private sale, without demand for performance, with or without notice to the mortgagor, (if given notice by mail to address below being sufficient) with or without having such property at the place of sale, and upon such terms and in such manner as the mortgagee may determine; the mortgagee may bid at any public sale. From the proceeds of any such sale, the mortgagee shall deduct all expenses for retaking, repairing and selling such property, including a reasonable attorney's fee. The balance thereof shall be applied to the amount due; any surplus shall be paid over to the mortgagor; in case of deficiency the mortgagor shall pay the

same with interest and the mortgagor does hereby confess judgment in the amount of said deficiency."

Third: That Jack Whelan died January 31, 1942, in possession of the automobile. All deferred payments due on said mortgage had been made at the time of the death of the mortgagor, the last payment having been made January 17, 1942. A payment due February 16, 1942, after the death of the mortgagor, was not paid. At the death of the mortgagor the sum of $369.96 was unpaid under the terms of the mortgage.

Fourth: That on February 21, 1942, The Brandt Motor Company, without court order or any court proceedings, obtained possession of the automobile and thereafter they sold said automboile to Naomi Roberts, and on March 2, 1942, a certificate of title was issued to her in Jefferson County, Ohio.

Fifth: That Stuart B. Moreland was appointed administrator of the estate of Jack Whelan, deceased, March 17, 1942.

The pleadings and evidence in this case present this question for determination by the Court:

What is the effect of the death of the mortgagor in possession of the automobile upon rights of. the mortgagee under the chattel mortgage?

There are two lines of authority in the United States on this question.

"As a general rule, the death of the mortgagor does not revoke a power of sale, even though the mortgage is held merely to give a lien on the property. This being coupled with an interest in the estate, cannot be revoked or suspended by the mortgagor." Sec. 2320, Vol. 3 Jones on Mortgages, pages 831-832. Cases therein cited.

See also: Conners et v Holland, 113 Mass. 30; Varnum v Meserve, 8 Allen, page 158, 96 Amer. St. Rep. 688, 10 Am. Jur. 812, Sec. 149.

"In some states where, by statute or adjudication, a mortgage is regarded as a mere security for debt, passing no title or estate to the mortgagee, a power of sale is regarded as not coupled with an interest, and it is revoked and rendered incapable of execution by the death of the mortgagor. A sale under the power made after the death of the mortgagor, is void." Sec. 2323, Vol. 3, Jones on Mortgages, p. 836. Also cases therein cited.

In Volume 14 Corpus Juris Secundum, Sec. 366, page 1021, it is stated:

"The power has been held not to continue after the death of the mortgagor although the contrary has been held as regards the rights to sell based upon a statute." Citing Kater v Steinbruck, 40 Penn. 501. See also, 10 Am. Jur. 812, Sec. 149.

It is well settled in Ohio that the mortgagee's interest under a chattel mortgage is that of a general owner of the property mortgaged.

**Robinson v Fitch, 26 Oh St 659.**

**Root & McBride Bros. v Davis et, 51 Oh St 29.**

**Bear v The Colonial Finance Co., 42 Oh Ap 482.**

**St. Mary's Machine Co. v National Supply Co., 68 Oh St 535.**

It would seem that Ohio, the mortgagee being the general owner, should fall within the rule first set forth herein, and that the mortgagor's death would not revoke a power of sale unless otherwise controlled by statute or judicial decisions.

However, in examining the authorities in Ohio it appears that this question has been considered in the case of **Lingler, Plaintiff in Error, v Wesco, Administrator of Estate of Franz Kraft**, deceased, **79 Oh St 225**, wherein it was held:

"Where the mortgagor dies in possession of the goods and chattels covered by the mortgage, even after condition broken, and his administrator has taken possession of said goods and chattels in his trust capacity, the mortgagee cannot maintain replevin against such administrator for their possession. In such case, if the mortgage is valid, the interest of the mortgagee in the property under mortgage is transferred to the fund arising from the sale by the administrator."

In the above case the mortgage in question did not contain the right of the mortgagee to take possession on default, nor did it contain the power of sale and distribution of proceeds. The court, in its opinion, referred at least three times to the fact that the chattel mortgage did not confer any special powers such as power to sell or make other disposition of the mortgaged property. However, on page 236 of said opinion the court said:

"But aside from the lack of averment of what powers were conferred by the mortgage in question, we still have the question, **what change occurs in the rights of a mortgagee on the death of the mortgagor?**" (Emphasis ours.)

In discussing this question the Court says:

"Death did not remove or impair the lien, but we think it did so change the relation of the parties that the remedy by replevin, which might have been enforced in the lifetime of the mortgagor, is not available when the mortgaged property passes into the custody of the administratrix. The new situation does not dissolve the contract relation or impair the contract, but cuts off one of the remedies that could have been pursued against the mortgagor. * * * His rights as to the debt and its security may be one thing, and the remedy to enforce them may be another."

On page 237 the Court says:

"While the statute provides the method of obtaining a valid lien on personal property by mortgage, * * * other provisions provide for the sale and distribution of personal property after the death of the owner."

After quoting and referring to several sections of the statute relating to descent and distribution and the administration of estates, the court held that the mortgagee could not maintain replevin against the administrator for the possession of the personal property covered by the mortgage and that the interest of the mortgagee in the property under mortgage is transferred to the fund arising from the sale by the administrator.

It seems that the court held in this case that it was immaterial whether the default occurred in the lifetime of the mortgagor or after his death.

There seems to be some uncertainty as to the holding in this case, that is, would the court have arrived at the same conclusion had the mortgage contained the right to take possession of the property and the power of sale after default? We find this case, Lingler v Wesco, Admr., interpreted in 10 Am. Jur., page 812, Sec. 149, as follows:

"* * * In other jurisdictions, however, the mortgagee is not allowed to take possession of the property as against the administrator and cannot maintain replevin therefor on the ground that statutes require the legal representative of the deceased to administer his property and that the mortgage must be paid, by order of the probate court, out of the proceeds of the estate. Under this rule, the interest of the mortgagee in the property is transferred to the fund arising from a sale of the same by the administrator. The death of the mortgagor does not dissolve the contract relationship arising by virtue of the mortgage or impair the contract or remove or impair the mortgagee's lien, but merely affects his remedy."

Also in 21 L. R. A. (N. S.) 182, in connection with the case of Lingler v Wesco, we find this case note:

"although it did not appear that the chattel mortgage involved in Lingler v Wesco contained a clause giving the mortgagee the right to take possession or to foreclose on default, and this circumstance was considered of sufficient importance by the court to receive mention, yet, in denying to a mortgagee the right to possession of the mortgaged chattels as against the administrator of the deceased mortgagor, the court apparently treated the contract as conferring the right of possion upon the mortgagee. It is to be noted in this connection that the conclusion of the court was based, in part at least, upon statutory provisions which were construed to confer upon the representative of a deceased mortgagor the right to possession of mortgaged chattels for the purpose of administration, although the statutes referred to did not in express terms provide for possession in the personal representative to the exclusion of the mortgagee. Neither does the statute in express terms provide that the ordinary remedies of a mortgagee of chattels shall be barred by the death of the mortgagor. The doctrine of this case is contrary to the doctrine of the California and Iowa courts, wherein it was reasoned that the right of a mortgagee to possession and to foreclose on default was a contractual right, and the cases were disposed of on that theory. It would seem that this ground is pretty well answered in Lingler v Wesco, wherein the right to possession and to foreclose is held to be a remedy, and not a contractual right. As applied to the right to foreclose, or the manner of procedure, the soundness of this position can hard-

ly be doubted. The cases holding the right to foreclose is a contractual right rather than a remedy did not, apparently, seriously consider the distinction."

It is also stated in said case note as follows:

"Cases asserting that the mortgagee has this right as against the personal representative do not go to the length of holding that this doctrine applies before appointment of a personal representative. Litz v Exchange Bank, 15 Okla. 564, 83 Pac. 790, is the only case found wherein this question was passed upon; and it was there held that a mortgagee of chattels who seized and sold the chattels by virtue of a right expressly conferred by the mortgage, but after the death of the mortgagor and before a special or general administrator had been appointed, or any application for appointment had been made, was liable to the administrator for double the value of the property seized and sold. The court said that as the property of the decedent passed by statute, at the moment of his death to the heirs, subject to the control of the probate court, that the right of a mortgagee to foreclose and sell property was suspended and held in abeyance until a special or general administrator was appointed by the probate court, and any attempt to sell or alienate the property during that period was a wrongful intermeddling of the property of the intestate. It was, however, recognized that, where the mortgaged chattels were in danger of being lost or destroyed, the mortgagee could take possession for the purpose of preserving the same until the appointment of a special or general administrator."

On the other hand the court in the case of **Hamilton, Exr. v. First National Bank of Pandora, 33 Oh Ap 200,** in commenting upon the opinion in Lingler v Wesco, Admr., after referring to the lack of the power of sale in the mortgage, concluded as follows:

"This, at least, is an intimation that, had there been some special powers conferred upon the mortgagee by the mortgage, the judgment would be otherwise than there pronounced."

280

In this case special powers and authority and explicit directions regarding the surplus regarding any sale of the property was set forth in the contract. It is also to be observed that the collateral security was in the hands of the creditor at the death of the debtor, and upon a default under these facts, the court held:

"Where testator deposited note with bank as collateral security for loan and agreed that the bank might collect any moneys due on the security or sell and assign it at public or private sale at its option, applying proceeds over costs to pay testator's debt to bank, executor's rights on testator's death were no greater than those of testator, and executor, prior to discharge of debt, could not. recover possession of collateral security note for purpose of administering it as part of assets of estate."

There has been no material change so far as this case is concerned in the statutory law respecting descent and distribution and the administration of estates referred to by Judge Price in his opinion in Lingler v Wesco. The present statutes, though bearing different numbers, are now applicable in the same manner and to the same effect as the statutes referred to by Judge Price. We believe that upon the authority of the case of **Lingler v Wesco, Administrator, 79 Oh St 225,** we must hold that upon the death of Whelan the right of possession of the automobile was in his administrator, upon his appointment and qualification, subject to the mortgage lien, to be administered in the manner provided by law. The court, however, feels that The Brandt Motor Company had the right to take possession of the automobile to preserve it, if it felt this necessary, until the administrator was appointed, but upon the appointment of the administrator it was the duty of The Brandt Motor Company to deliver the automobile to the administrator. The Brandt Motor Company did not acquire title, and the right of possession as against the administrator, to the automobile and, therefore, could not transfer title and the right of possession of the automobile to the purchaser, Naomi Roberts, the defendant in this case. The right of recovery of possession of the automobile is awarded to the plaintiff in this action.

Exceptions allowed the defendant.