## MEEK v. TILGHMAN et al.

No. 6418.   Opinion Filed February 1, 1916.
(154 Pac. 1190.)

1. **SHERIFFS AND CONSTABLES—Action on Official Bond—Per-
son Killed Resisting Arrest—Pleading—Color of Office.** Where
a deputy sheriff killed a man, and his widow brought suit against
the sheriff and his bondsmen for damage, alleging that the husband
of the plaintiff had committed a misdemeanor in the presence of
the deputy sheriff, who thereupon attempted to arrest him, and,
upon the deceased resisting arrest, the deputy released his hold
upon him, and stepped off a few steps, but returned to the de-
ceased saying, "I will arrest you, anyhow," and shot the deceased,
killing him, **held,** that the facts pleaded show this act was done
while in the discharge of his official duty, and under the color of
office, and that it was error to sustain a demurrer to the petition
on the theory that at the time of the shooting the deputy was only
engaged in a personal encounter, and not acting under the color of
office.

2. **SAME—Official Acts—What Constitute.** The mere fact that a
peace officer in the discharge of his duty becomes angered does not

rob his acts of their official character. Nor does the fact that he may have momentarily abandoned his effort to discharge this official duty render the resumption of it any the less an official act.

3. SAME—Wrongful Acts of Deputy Sheriff—Liability on Official Bond. Under the Constitution, the law cannot inflict the death penalty as punishment for a misdemeanor; and an officer certainly has no right to kill a person guilty of a misdemeanor to prevent him from escaping justice.

(Syllabus by Brett, C.)

*Error from Superior Court, Pottawatomie County; George C. Abernathy, Judge.*

Action by May Meek, administratrix, against J. B. Tilghman and others. Judgment for defendants, and plaintiff brings error. Reversed and remanded.

*W. S. Pendleton,* for plaintiff in error.

*T. G. Cutlip* and *McClain Taylor,* for defendants in error.

Opinion by BRETT, C. This is an action on a sheriff's bond commenced in the superior court of Pottawatomie county by the plaintiff in error against the defendants, the sheriff of that county and his bondsmen, to recover damages for the alleged wrongful killing of her husband by a deputy sheriff. The parties will be referred to as plaintiff and defendants, as they appeared in the lower court.

The petition, after alleging that the plaintiff is the administratrix of the estate of M. H. Meek, deceased, alleges that E. A. Pierce was the duly elected, qualified, and acting sheriff of Pottawatomie county, and that the defendants, King, Green, Perry, and Wilson are his bondsmen, and charges that one J. B. Tilghman was a duly appointed, qualified, and acting deputy sheriff, and alleges, in substance, that on the 19th day of March, 1911,

M. H. Meek, then living, was the husband of plaintiff; that he had a bottle of whisky on his person, and was conveying same from place to place in the city of Shawnee; that he, the said Meek, broke said bottle of whisky against a brick wall in the presence of said J. B. Tilghman; that said Tilghman attempted to arrest Meek; "that the said Meek then and there protested against said arrest, insisting that the said Tilghman had no right to arrest him without a warrant; that the said Tilghman still insisted on holding the said Meek under arrest, dragging him some yards, but finally released his hold and walked away a short distance from the said Meek; that during this time the said M. H. Meek and the said officer were quarreling and calling each other hard names, when suddenly, in a fit of anger and rage, said Tilghman whirled around, drawing his revolver, and, walking back to the said Meek, said, 'I will arrest you, anyhow,' and fired at the said Meek several shots from the said revolver, three of said shots taking effect in the body of the said Meek, killing his instantly." And the plaintiff asked for actual and also exemplary damages. No service of summons was had upon Tilghman, as it appears he had absconded. The sheriff and his bondsmen each filed general demurrers to the petition of plaintiff, which were sustained by the court. The plaintiff declined to amend her petition, and judgment was rendered against her for the costs, and from this judgment she appeals to this court.

The sole question is whether the petition stated a cause of action against the sheriff and his bondsmen. The defendants insist that it does not, for the reason that the petition does not allege facts sufficient to show that at the time the wrong was committed Tilghman was act-

ing in his official capacity, and in the discharge of his official duty. But they say, on the other hand, it shows that Tilghman had abandoned the arrest, and returned to engage in a personal encounter. But we cannot agree with this contention. While it is true that the petition is not a model, yet, as we have said before, there is a wide distinction between a defective statement of a good cause of action and the statement of a defective cause of action; and the petition, we think, is good, as against a general demurrer.

The facts alleged are sufficient to show that the deceased was guilty of having committed a public offense in the presence of an officer (section 3605, Rev. Laws 1910), and section 5654, Rev. Laws 1910, made it the duty of the officer to arrest him without a warrant. The facts alleged show that he did this, but, owing to the resistance of deceased, released his hold on him and walked a short distance away, but walked back to the deceased, saying, "I will arrest you, anyhow," and fired the fatal shots. Under the statute, that it was his duty to arrest the deceased without a warrant is clear; and the facts pleaded show that he was persisting in his effort to discharge this duty at the time he fired the fatal shots. To ascribe any other meaning to the language he is alleged to have used on returning to the deceased would be strained. The mere fact that he became angered in the discharge of his official duty does not rob it of its official character. Nor does the fact that he may have momentarily abandoned the effort to discharge this official duty render the resumption of that effort any the less an official act.

The defendants cite numerous authorities to the effect that a peace officer's bondsmen are not liable for

extra-official acts, and that before the bondsmen can be held liable it is necessary to allege and prove that the unlawful act was done under the color of office and while acting in the general line of his official duties. That is, we think, the correct rule, and the one we have applied in testing the sufficiency of the facts pleaded in the petition under consideration. In *Brown v. Weaver*, 76 Miss. 7, 23 South. 388, 42 L. R. A. 423, 71 Am. St. Rep. 512, in a well-considered opinion the court quotes from Murfree on Sheriffs as follows:

."If the act from which the injury resulted was an official act, the authorities are clear that the sheriff is answerable; if it was not an official, but a personal, act, it is equally clear that he is not answerable. But an official act does not mean what the deputy might lawfully do in the execution of his office; if so, no action would ever lie against the sheriff for the misconduct of his deputy. It means, therefore, whatever is done under color or by virtue of his office."

And the author then adds:

"To hold the deputy and his sureties liable to the sheriff on his bond, it is not necessary that the deputy should be acting under color of some writ, but, if he is acting under color of his office, and professing so to act, and inducing others interested to believe he is acting *colore officii*, he and his sureties will be bound by such acts. No other rule would be safe. Sureties are not needed on a sheriff's bond, if they are only to be held when he acts legally. They vouch for his acts, and bind themselves to make good any damage he may cause to any one while acting under color of his office."

This clearly distinguishes the acts of a deputy for which the sheriff and his bondsmen are liable from those for which they are not liable; and we think the pleader in the petition under consideration has pleaded facts

which show this act was done under color of office. And it is well settled that a peace officer, in making an arrest, may only use such force as is necessary to overcome the resistance he encounters, and cannot take the life of the accused or inflict upon him great bodily harm, except to save his own life or to prevent a like harm to himself. And killing a man guilty of a misdemeanor in an effort to arrest him is inexcusable. In *Brown v. Weaver, supra,* the court says:

"'A resort to a measure so extreme in cases of misdemeanor was never permitted by the common law. 1. East, P. G. 302. That law has not, it is believed, lost any of its humanity since the time of the writer we have just cited. * * * But without legislative authority the severity of a remote age ought not to be exceeded in dealing with those who are accused of smaller offenses.' *. * *

"'It has been said that the officers of the law are clothed with its sanctity, and "represent its majesty." * * * But the lawmaking power itself could not, under the Constitution, inflict the death penalty as a punishment for a simple misdemeanor. * * * And it would ill become the "majesty" of the law to sacrifice a human life to avoid a failure of justice in the case of a petty offender, who is often brought into court without arrest, and dismissed with a nominal fine.'"

We think the petition states facts sufficient to show that Tilghman killed deceased while acting in the general line of his official duties and under the color of office. This being true, section 1695, Rev. Laws 1910, specifically makes the sheriff and his bondsmen liable for the "acts and omissions of his undersheriff, deputy sheriffs and persons deputed to do particular acts."

But there is no question that the petition wholly fails to state a cause of action for punitive or exemplary damages, as against the sheriff or his bondsmen.

We therefore recommend that the judgment be reversed, and the cause remanded for further proceedings not inconsistent with this opinion.

By the Court: It is so ordered.