### STEINICKE v. HARR et al.

No. 12623—Opinion Filed Feb. 12, 1924.

Rehearing Denied Oct. 13, 1925.

**1. Arrest—When Authorized Without Warrant.**

Section 2471, Comp. Stat. 1921. empowers peace officers to arrest a person without warrant: (1) For a public offense. committed or attempted in his presence: (2) when the person arrested has committed a felony, although not in his presence; (3) when a felony has in fact been committed and he has reasonable cause for believing the person arrested to have committed it.

**2. Adultery—Felony Offense.**

Section 1853, Comp. Stat. 1921, prescribes imprisonment in the penitentiary as a punishment for adultery, and such crime is a felony under the laws of Oklahoma.

**3. False Imprisonment —Action —Parties Liable—Demurrer to Evidence.**

Plaintiff's petition alleges the defendant Neil Harr was sheriff, the defendant National Surety Company of New York was surety, and U. S. Jennings was deputy sheriff; that U. S. Jennings entered the home of the plaintiff, entered her bed chamber, and, announcing that he was an officer. placed plaintiff and her husband under arrest charging them with the crime of adultery. Plaintiff introduced evidence in support of the allegation of the petition. The court sustained a demurrer at the conclusion of the evidence as to Neil Harr and the National Surety Company of New York. Held, the deputy was acting within the scope of his authority, and as an officer, for whose acts the sheriff was liable, and the judgment of the court sustaining the demurrer as to defendants Harr and his surety was error.

**4. Statutory Provision.**

Section 5898, Comp. Stat. 1921, provides: "The sheriff shall have charge and custody of the jail of his county and all prisoners in the same, and shall keep such jail himself, or by his deputy or jailer, for whose acts he and his sureties shall be liable."

**5. False Imprisonment—Liability of Sheriff and Bondsmen for Acts of Deputy.**

Where plaintiff's petition alleges, and the uncontroverted evidence proves, that plaintiff was actually imprisoned by the deputy sheriff, section 5898, supra. makes the sheriff and his sureties liable for the acts of such deputy, and the judgment of the court sustaining a demurrer to plaintiff's evidence upon the ground of nonliability on the part of the sheriff and his surety is error.

(Syllabus by Ruth, C.)

Commissioners' Opinion, Division No. 3.

Error from District Court, Ottawa County; S. C. Fullerton, Judge.

Action by Marie Steinicke against Neil Harr. U. S. Jennings. and National Surety Company. From the judgment. plaintiff appeals. Reversed and remanded.

A. C. Towne, for plaintiff in error.

Frank Nesbitt, for defendants in error.

Opinion by RUTH, C. This action was filed in the district court of Ottawa county by plaintiff in error, Marie Steinicke, plain-

tiff below, against Neil Harr, U. S. Jennings, and the National Surety Company of New York, as surety on the official bond of Neil Harr, defendants in error, defendants below, to recover damages for false arrest and imprisonment by the sheriff, Neil Harr, and his deputy, U. S. Jennings, and for convenience the parties will be designated as they appeared in the court below.

Plaintiff in her petition alleges that Neil Harr was the duly elected and acting sheriff of Ottawa county, Okla., and U. S. Jennings was his duly appointed and acting deputy, and the National Surety Company of New York was surety on the official bond of Neil Harr as such sheriff; and that on a certain night, while the plaintiff was at home and in bed with her husband, George Steinicke, the defendant U. S. Jennings entered the home and the room of the plaintiff occupied by plaintiff and her husband, and, announcing that he was "the law,"—that is, that he was entering in his capacity as deputy sheriff — placed the plaintiff and her husband under arrest, charging the plaintiff with adultery, and took them to the jail and there imprisoned them; that plaintiff as well as her husband and the husband's mother being present, protested the arrest, claiming plaintiff and George Steinicke were legally and lawfully married, and offered to show the defendant Jennings their marriage certificate; that, notwithstanding this, they were arrested about 10:30 p. m., and imprisoned in the jail; that the jail was foul, filled with stench and bad odors, that it was unsanitary, without bed, toilet, heat, seat, water, or vessels of any kind, and had a bare concrete floor, and plaintiff was so imprisoned until the early hours of the following morning, when she was released, and as a result of such arrest and imprisonment the plaintiff suffered and sustained great physical and bodily injury and suffered great mental anguish and pain.

To the petition of the plaintiff, the defendants filed their several answers, admitting the official capacity of the defendants Harr and Jennings, and the suretyship of the National Surety Company of New York, and the defendant Jennings admits he went to the home of the plaintiff and found her in bed with a man unknown to the defendant Jennings, and admits that he arrested her for indecent conduct and consorting with the said George Steinicke, and that he took the plaintiff and George Steinicke to jail and afterwards released them, and that he did not know at the time of the arrest that they were married, if such was a fact.

The defendant Neil Harr in his answer sets up the defense that if U. S. Jennings did arrest the plaintiff, it was done wholly without warrant or process of any court of any kind, and wholly without knowledge, acquiescence, or consent of the defendant Harr, and that no crime was committed in the presence of the said U. S. Jennings, neither was the body of the plaintiff wanted to answer to any felony charge. The defendant Harr further admits in his answer that Jennings went to the home of the plaintiff at the request of some citizens (whose names the defendant Harr does not give) and, finding the plaintiff in bed with a man by the name of Steinicke, placed both parties under arrest for "consorting with the said Steinicke as his wife and not at the said time being married to the said Steinicke." And the defendant Harr further states. as a defense that he has since discovered that the parties were married but they had concealed their marriage from the defendants Neil Harr and U. S. Jennings.

Upon the issues being joined, the cause was duly tried to a jury and evidence introduced by the plaintiff, who rested. Thereupon the defendant Jennings filed his separate demurrer, which was by the court overruled, and the defendants Harr and the National Surety Company of New York filed their demurrer, which was by the court sustained for the reason, "the testimony failed to produce facts sufficient to constitute any action in favor of the plaintiff against the said defendants Neil Harr and the National Surety Company," and this cause is brought to this court for review upon judgment of the court sustaining such demurrers. The defendants in their brief insist that the action of the court should be sustained for that it developed at the trial that Jennings was acting without a warrant, and that no crime has been committed in the officer's presence, and the body of the plaintiff was not wanted for committing a felony; and cites numerous cases in support of this position. We have examined the cases cited by the defendants very carefully and in no case cited or called to the attention of this court did we find any exact parallel for the instant case. Dysart v. Lurty, 3 Okla. 601, 41 Pac. 724, cited as authority in this case, is not in point for the reason that that was a case in which the officer had a warrant for the arrest of Dysart for conducting a liquor business without a license in territorial days and the marshal arrested both Dysart and Smith, his partner, and seized the stock of wines, liquors, etc., without any writ or process,

and the question of illegal arrest and imprisonment did not enter in the case, and it is, therefore, not persuasive upon the court, being an action to recover for the unlawful seizure and destruction of the liquor, etc. Both Lowe et al. v. City of Guthrie, 4 Okla. 287, 44 Pac. 198, and Hughes et al. v. Board of Commissioners of Oklahoma County, 50 Okla. 410, 150 Pac. 1029, were purely civil cases against the city clerk in the one instance and the court clerk in the other for the return of money alleged to have been collected and unaccounted for. In Jordan v. Neer, 34 Okla. 400, 125 Pac. 1117, relied upon by defendants, it is said:

"Sureties on the official bond of a sheriff are only answerable for the acts of their principal while engaged in the performance of some duty imposed upon him by law or for an omission to perform such duty. * * *

"To constitute color of office such as will render an officer's sureties liable for his wrongful acts, something else must be shown besides the fact that in doing the act complained of the officer claimed to be acting in an official capacity, if he is armed with no writ, or if the writ under which he acts is utterly void, and if there is at the time no statute which authorized the act to be done without process, then there is no such color of office as will enable him to impose liability upon the sureties on his official bond."

But in the case just quoted from, the question of false arrest and imprisonment did not arise as the plaintiff's husband was shot and killed by deputy sheriffs when they were making a raid upon a disorderly house.

The case of Meek v. Tilghman, 55 Okla. 208, 154 Pac. 1190, is more nearly in point, although the question of false arrest and imprisonment is not involved, as in that case the deputies arrested the deceased while he was committing a misdemeanor in their presence, and upon his resisting arrest, as they claimed, one of the deputies unnecessarily and wantonly shot and killed him, and, though the sheriff was not present, this court held that the deputy was acting in an official capacity which made his superior officer, the sheriff, liable.

In the instant case there was no controverting evidence, the plaintiff stating she was arrested in her own home and in her own room while sleeping with her husband. The deputy announced that he was arresting her for adultery with George Steinicke, with whom she was then in bed, he being her husband. Section 1852, Comp. Stat. 1921, describes adultery, and section 1853, Comp. Stat. 1921, prescribes a punishment for adultery by fixing a term in the penitentiary, constituting the same a felony under the laws of Oklahoma, in conformity with section 1503, Comp. Stat. 1921.

If, therefore, the deputy sheriff, Jennings, being one of the defendants in this case, entered the home and the bedroom of the plaintiff and her husband and arrested them while in bed and announced that he was arresting them for the crime of adultery, he was acting in his official capacity, to such an extent as would make the sheriff liable for his actions, as section 2471, Comp. Stat. 1921, empowers an officer to arrest without warrant any person committing a misdemeanor or felony in the presence of the officer.

It is admitted in the answer of the defendant Jennings as well as the defendant Harr, that the plaintiff and her husband were taken to the jail and there imprisoned for a certain length of time. The length of the time of imprisonment is immaterial if the imprisonment was unlawful except in so far as it might go to the aggravation of damages. The plaintiff alleged in her petition and so testified that she was imprisoned in a place where there was but a bare concrete floor, no bed, chair, seats, water, or closets, and she suffered great bodily injury and mental anguish. If the arrest had been made under such condition as would have held the sheriff blameless what could be said of the actual imprisonment? The imprisonment is admitted in the answer of both the deputy and sheriff, and section 5898, Comp. Stat. 1921, provides as follows:

"The sheriff shall have the charge and custody of the jail of his county, and all the prisoners in the same, and shall keep such jail himself, or by his deputy or jailer, for whose acts he and his sureties shall be liable."

This court, in Hixon et al. v. Thomas B. Cupp, 5 Okla. 545, 49 Pac. 927, held:

"The liability of the sureties on the sheriff's bond in such a case is a joint one with the sheriff and they may be sued together with the sheriff, directly upon his bond, for such nonfeasance or misfeasance in office, and they will be liable together with him thereon."

In view of this opinion and the statute upon which the same is apparently based, it is manifest that the imprisonment in the jail (the statute providing that the sheriff shall have complete and full control of the jail) imposes upon the sheriff the duty of seeing that no one is imprisoned therein without a proper commitment, or where a commitment by a magistrate is unobtainable, that such imprisonment must be by an

officer while in the lawful discharge of his duty, and to accept as a prisoner any person at the jail who is illegally or unlawfully arrested would result in making the sheriff liable for such unlawful imprisonment.

It appears in the opening statement of the defense, counsel for the defendants stated several times, over the objection of counsel for the plaintiff, that they would prove the plaintiff "practiced prostitution," and this expression was used frequently although objected to by counsel for the plaintiff, who was overruled by the court, and defendants' counsel stated they would not offer that as a defense and assigned no reason for making this statement before a jury, as it was not in issue and had the cause gone to a jury, it was such a statement as would tend to prejudice the minds of the jury and possibly cause a reversal of the case by this court on appeal on behalf of the plaintiff.

This case was to be tried fairly and squarely upon the fact of whether or not the plaintiff had been illegally and unlawfully arrested and imprisoned, and what her previous character may have been was of no concern of the sheriff or his deputy, unless put in issue at the trial by the plaintiff. All parties were satisfied that at the time she was arrested she was legally and lawfully married to George Steinicke, with whom she was living and was in bed at the time of the arrest, and be her character as bad as the defendants would have painted it, prior to such marriage, it is such acts as these on the part of officers that cause women to fall lower, when it should be the object of all good citizens, and particularly conservators of the peace, to help them to rise above their former lives, and not by such acts as this drag them down to deeper infamy, and shame, and disgrace. This particular question, however, is not before the court for decision at this time, and we trust it will never come before this court; but for the reasons herein stated, this cause should be reversed and remanded, with instructions to the court below to vacate its judgment sustaining the demurrers of the defendants Harr and the National Surety Company of New York, and to overrule the same and grant a new trial and proceed in this cause in conformity with this opinion.

By the Court: It is so ordered.