### ALFORD v. McCONNELL et al.
### Nos. 2502, 2503.

District Court, N. D. Oklahoma.
April 13, 1939.

Gaylord R. Wilcox, of Sapulpa, Okl., Johnson & Jones, of Bristow, Okl., and Goldesberry & Klein, of Tulsa, Okl., for plaintiff.

Dudley, Hyde, Duvall & Dudley, of Oklahoma City, Okl., for defendant McConnell.

Green & Farmer, of Tulsa, Okl., for defendant Maryland Casualty Co.

FRANKLIN E. KENNAMER, District Judge.

This action is instituted against Dave McConnell and The Maryland Casualty Company for the recovery of damages on account of wrongful death. Two separate actions are pending, each for the recovery of damages for the death of the respective intestates. The defendant, McConnell, was superintendent of the Bureau of Criminal Identification and Investigation, and with other members of the Bureau had been dispatched to the northeastern part of the State of Oklahoma in connection with a labor strike. While driving his automobile from the strike area to Oklahoma City, his headquarters, his automobile collided with another car. Two of the occupants of the other car were killed and their administrator brings these actions for the recovery of damages against the defendant McConnell and the surety on his official bond. The two occupants of the car that were killed in the collision were the father and mother of the plaintiffs in these actions. The petition charged that the defendant, McConnell, was driving his car in a reckless and careless manner while under the influence of intoxicating liquor. The proof was sufficient to support the allegation of negligence contained in the petition. The cases were tried together and the jury returned a verdict against both defendants. There was ample evidence to support the jury's verdict against the defendant McConnell, and that verdict has the approval of the court. Therefore there can be no doubt as to the sufficiency of the verdict insofar as the defendant, The Maryland Casualty Company, is concerned, there being presented, however, a question as to legal liability. The cases are before the court on motions for new trial and for judgment notwithstanding the verdicts of the jury.

■ The office of Superintendent of the Bureau of Criminal Identification and Investigation was created by Statute, and such an official had and exercised powers of a sheriff or peace officer throughout the entire State of Oklahoma. See Chap. 24, Art. 17, O.S.1931, 74 Okl.St.Ann. § 131 et seq. An official bond is required of such an officer, for the faithful performance of the duties of his office. See, Sec. 4732, O.S.1931, 74 Okl.St.Ann. § 132. The liability of the surety, can arise only if the acts of the defendant McConnell constitute a failure to faithfully perform his official duties. The liability of the surety on the official bond is governed by the law and decisions of the State of Oklahoma. See, Bassinger v. United States Fidelity & Guaranty Co., 8 Cir., 58 F.2d 573; Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487; Ruhlin v. New York Life Insurance Co., 304 U.S. 202, 58 S.Ct. 860, 82 L.Ed. 1290.

■ The questions involved in this case have not been directly passed upon by the Oklahoma Supreme Court. However, the Oklahoma Supreme Court has passed upon cases involving facts different from those involved herein, but which established liability against a surety. The decision which is apparently controlling of the issues here presented, is Meek v. Tilghman, 55 Okl. 208, 209, 154 P. 1190. In the cited case damages were sought against the Sheriff and his bondsmen because of a deputy sheriff having shot a person, who had been released by the deputy, after he had committed a misdemeanor. A demurrer was sustained to the plaintiff's petition on the ground that his act was not official, he having abandoned his effort to discharge his official duty, and having become angered, engaged in a personal encounter. The ruling of the court was reversed, and it was adjudged that the petition did state a cause of action. It was determined in the cited case that the officer was acting officially, having a legal duty to arrest a person committing a misdemeanor in his presence, but because of the excessive force employed, to-wit, killing the deceased in anger, that he and his bondsmen were liable. The rule is announced that the bondsman may be held liable for unlawful acts done by an officer under the color of office, and while acting in the general line of his official duties, and further that if the act from which the injury resulted was an official act, the officer and his surety were liable; if it was not an official, but a personal act, the surety is not responsible. An official act does not mean what the deputy might lawfully do in the execution of his office; it means whatever is done under color of or by virtue of his office. It further held, in quoting from other authority, that to hold the surety liable, it is not necessary that the officer should be acting under color of some writ, but if he is acting under color of his office the surety will be bound by such act. In the instant case, the defendant McConnel was acting officially. He was transporting equipment belonging to the Bureau, which had been taken to the strike area for use in preserving order, and he was in charge of his subordinates in enforcing the laws of the State of Oklahoma and in performing his duties as a peace officer. The evidence conclusively shows that he was carrying out the functions of his office at the time of the accident. He was not acting under a particular writ, but the Supreme Court has held that such is not necessary to render the surety liable, it being sufficient if he is acting under color of his office. It is just as much the duty of an officer to reach the scene of trouble, as it is for him to act to preserve order when he reaches the scene. It is likewise the duty of peace officers to move from place to place in the performance of their duties; especially is this true with respect to officers engaged in hunting for prisoners, and in answering calls for the preservation of peace. Excessive force in the performance of an officer's duty must not be limited and restricted to the actual force necessary in a particular act. It must include all acts done by such officer in the performance of his official duties. In other words, if the officer in the cited case, because of his anger, had wounded or killed an innocent bystander, as well as the person who had committed the mis-demeanor, the sheriff and his surety would have been liable. By the same reasoning, if the excessive force had resulted in the destruction of personal property by the officer shooting the deceased, the owner of such personal property would have been entitled to recover damages against the sheriff and his surety. Improper driving of an automobile, in the discharge of his official acts, is similar to the improper use of the officer's revolver. It should make no difference as to how the excessive force is exercised by the officer. The test should be whether he is using only force, and is taking necessary action in the performance of his official acts.

■ The facts fairly summarized reveal a case of an officer, while in the performance of his official duties, driving his automobile recklessly, negligently and at an excessive rate of speed, while absolutely unnecessary in the discharge of his official duties. If a peace officer is summoned to a scene, and the emergencies require, he and his bondsmen will be absolved from liability because of injuries resulting from driving to such scene at a high rate of speed; on the other hand, if there is no emergency, such excessive rate of speed may .be improper, and if injury results therefrom, the officer and his surety should be held responsible for all injuries occasioned.

The cited case appears to be the controlling authority herein. It has not been overruled, or its effectiveness diminished by any subsequent decision in Oklahoma.

In Chase, et al. v. McDonall, 154 Okl. 165, 7 P.2d 465, a constable and sureties on his bond were held liable for damages to an automobile which was damaged while in the possession of the constable under the purported levy of an execution. It was decided that he was acting by virtue of his office and his official bond was liable for damages caused by him while such property was in his possession.

Another case recently decided is McCorcle, et al. v. Morton, 171 Okl. 632, 44 P.2d 9, in which a sheriff and the surety on his bond were held for damages sustained by reason of a wrongful levy of a writ of execution. The Supreme Court, in passing upon the case, stated that the Statute involved contemplates liability for the reasonable consequences of official acts of the sheriff and those of his subordinates. The facts are different from those involved in the instant case, but the decision broadly announces the applicable rules for determining liability.

Earlier decisions of the Supreme Court of Oklahoma have held a surety not responsible for injuries or death arising out of an arrest where the officer has no legal process and there are no circumstances justifying an arrest without process. See, Dysart v. Lurty, 3 Okl. 601, 41 P. 724; Jordan v. Neer, 34 Okl. 400, 125 P. 1117; Taylor v. Morgan, 43 Okl. 142, 141 P. 679; Inman v. Sherrill, 29 Okl. 100, 116 P. 426. No liability has been imposed where an officer collects fees in compensation in excess of that provided by law. Lowe v. City of Guthrie, 4 Okl. 287, 44 P. 198; McCrory v. Board of Commissioners, 48 Okl. 684, 150 P. 683; Hughes v. Board of Commissioners, 50 Okl. 410, 150 P. 1029; Board of Commissioners v. Vaughan, 51 Okl. 609, 152 P. 115. Subsequent to the decisions noted above, the Oklahoma Supreme Court held a sheriff and his surety responsible for the wrongful payment of funds taken by the sheriff from a prisoner, and paid to an attorney at the request of the· prisoner.

In Hodgson v. Hatfield, 112 Okl. 134, 240 P. 69, liability was imposed because the sheriff had arrested a prisoner who had procured money from the plaintiff's intestate in an alleged robbery, wherein the person robbed was also killed. The prisoner was charged with murder and not robbery, and the money obtained from the prisoner by the sheriff was turned over by the sheriff to the lawyer who defended the prisoner on the murder charge. The prisoner was arrested in Kansas the day following the robbery, and the Kansas authorities had taken the money in controversy from him and turned it over to the Oklahoma sheriff, who brought 'the prisoner and the money from Kansas to Oklahoma. After the sheriff was advised by the County Attorney that the money was not needed as evidence, the sum was turned over to the attorney at the direction of the prisoner. It was contended by the surety that the sheriff was not acting in his official capacity when he left the state and took custody of the prisoner and the money, but such contention was rejected by the Oklahoma Supreme Court. The cases referred to involving arrests without legal process, or collection of funds in excess of that provided by law, are not applicable herein, for the reasons that different questions of fact are involved, and because more later decisions of the Supreme Court touching questions more kindred, indicate a different ruling.

■ It is urged that plaintiffs' intestates were transacting no official business with the defendant McConnell; that the relationship between them was that existing between any other travelers on the public highway, and that McConnell's obligation to drive carefully existed independently of his office and not because of it. It is not necessary that there be official business in order to impose liability upon a surety; it need only be necessary that the officer was in the performance of his official duties. The fact that there was an obligation on the defendant McConnell to drive carefully, does not relieve his surety from respon-

sibility. There was an obligation imposed upon the deputy sheriff in the case of Meek v. Tilghman, supra, to not shoot and kill people, but that independent obligation did not relieve the surety from liability.

The defendant McConnell, at the time of the fatal accident, was driving his automobile upon the public highway in connection with the discharge of his official duties and he was a peace officer of the State of Oklahoma charged with the duty of upholding the enforcement of laws of the State which included the duty of protecting the highways from unlawful conduct. He not only owed this duty to the plaintiffs' intestates but he owed a duty to the public to protect the highways from any unlawful conduct by other parties and while engaged in the performance of a public duty and using the highways in connection with his official conduct, he recklessly and unlawfully used his own automobile and thereby violated his oath of office and was guilty of a failure to faithfully perform the duties of his office. To my mind this conclusion is irresistible.

The case of Clark v. West et al., Tex. Civ.App., 126 S.W.2d page 569, is sound authority for the conclusion herein reached.

The motions for new trial and for judgment notwithstanding the verdicts of the jury should be overruled, because the defendant McConnell was in the performance of his official duties at the time he was engaging in unreasonable and unlawful acts, resulting in the damages.