## STATE v CARNEY

Court of Common Pleas, Franklin Co

No 23500. Decided April 13th, 1939

Ralph J. Bartlett, Prosecuting Attorney of Franklin Co and William C. Bryant, Assistant Pros. Atty., Columbus, for State of Ohio.

Paul M. Herbert, Columbus, attorney for defendant, Edward T. Carney.

John A. Connor, Columbus, attorney for defendant, Elmer W. Vossler.

Milton F. Farber, Columbus, attorney for defendant, Edwin Judy.

Dan H. McCullough, Toledo, attorney for James A. Bolinger.

## OPINION

By LEACH. J.

On motion of defendant Edward T. Car-

ney filed March 10, 1939, to require the Prosecuting Attorney to comply with the order of the Court. heretofore entered directing that the indictment be divided into counts and that each count be separately stated and numbered; and on motion of defendant James Angel Bolinger filed March 14, 1939. for an order requiring the Prosecuting Attorney to divide the counts in the indictment and separately state and number them.

Pursuant to an order of the court made before the filing of either of said motions the Prosecuting Attorney divided the indictment into counts which were separtely numbered as first, second and third counts.

By these motions it is contended that what has been numbered as the third count contains more than one separate and distinct offense and that each of them should be separately stated and numbered.

In so far as the defendants, Carney and Bolinger, are concerned the said count of the indictment numbered as the third count charges that on or about the 23rd day of October, 1936, the said Carney solicited and accepted a bribe from William R. Parmalee and John L. Rossel with intent to influence said Carney with respect to his official duties in a matter pending and that might legally come before him, to-wit, the registration by qualification of certain shares of stock in The Toledo Guaranty Corporation of Toledo, Ohio, and do further present and find that James Angel Bolinger, an examiner in the aforesaid Division of Securities, on or about said date, viz., the 23rd day of October, 1936 did unlawfully, wilfully and knowingly aid, abet and procure the aforesaid Carney to do and commit the aforesaid crime of soliciting and accepting a bribe in the manner and form as herein set forth in this indictment.

In short, this third count charges Carney with soliciting and accepting a bribe, and charges Bolinger as an aider and abettor.

Are different offenses stated which are required to be separately stated and numbered?

In Hartshorn v State, 29 Oh St, 635, Hartshorn had been indicted for burglary, and Burbank as an aider and abettor in the same indictment and in the same count thereof. Said the Court:

"This is a good indictment against both defendants. The offense of aiding, abetting, or procuring is a substantive and independent offense only in the sense that the offender may under our statute, be tried and convicted without the trial or conviction of the principal offender. They are not distinct or separate offenses in the sense that both may not, as at common law, be charged in the same indictment, and in the same count thereof, and both offenders arraigned and tried thereon, as in cases where the defendants are jointly indicted for the same crime or offense."

See also 21 O. Jur., p 733; State v Sundmaker, 11 N. P. N. S. 107.

Motions overruled. Exceptions.

On motions of defendants Edward T. Carney and James Angel Bolinger to quash the indictment and each count therein for the alleged reasons, First, "There is a misjoinder of the parties accused."

Sec. 13,437-27, GC, provides that

"No indictment or information shall be quashed, set aside or dismissed for any one or more of the following defects; (First), That there is a misjoinder of the parties accused."

The language of the statute so quoted is specific and requires this branch of the motions to be overruled and it is so ordered. Exceptions.

Second, "That there is a misjoinder of the offenses charged in the indictment or duplicity therein."

Said §13437-27 GC, further provides that,

"No indictment or information shall be quashed, set aside or dismissed for any one or more of the following defects: * * * (Second), That there is a misjoinder of the offenses charged therein."

This statutory language is likewise clear and specific and requires that the second branch of each of said motions be overruled and it is so ordered. Exceptions.

The third branch of the Carney motion alleged "that uncertainty exists particularly in the third count of said indictment". And the third branch of the Bolinger motion is for the alleged reason that "the indictment is uncertain as to time and place when the alleged offenses were committed."

This branch of the respective motions and the memoranda in support of each of them shows that substantially the same questions are here raised as were raised in the motions to require the prosecutor to separately state and number the offenses allegedly set forth in the third count of the indictment, which motion is dealt with and passed upon, supra. For the same rea-

sons as stated above on said motion, the third branch of the motion to quash will be overruled. Exceptions. (The matter of venue is elsewhere dealt with.)

On supplemental motions of defendants, Carney and Bolinger, to quash indictment and on demurrer of the defendant Judy to the indictment and each count thereof. The supplemental motion of Carney to quash is based on three alleged reasons as follows:

"(1) The law of the state of Ohio does not provide for any such office as 'Assistant Chief of the Division of Securities'.

"(2) As an employee or agent of the Division of Securities, the defendant, Edward T. Carney, according to law, had no legal duties relative to the granting or refusing of an application for a dealer's license, nor did his duties under the law give him any connection whatever with the registration by qualification of securities.

"(3) There is no venue alleged in the first and third counts of the indictment relative to the defendant Carney."

The supplemental motion to quash on behalf of the defendant Bolinger assigns the following alleged reasons:

"(1) The law of Ohio does not provide for any such office as Assistant Chief of the Division of Securities.

"(2) The law of the state of Ohio specifically establishes and limits the duties of an attorney examiner. (We take this to mean attorney inspector.)

"(3) The defendant Bolinger could not aid and abet the defendants Judy and Carney except with reference to their official duties.

"(4) The law does not give to this defendant Bolinger any authority with reference to qualification of securities.

"(5) There is no venue alleged in the third count of the indictment relative to this defendant."

The demurrer of the defendant Judy is upon the alleged ground that the facts alleged in the indictment, or in any count thereof, do not, as against him, constitute any offense punishable by the laws of this state; specifically that the duties of Judy as attorney inspector are provided by §8624-44, GC, as follows:

"The duties of this position shall be to investigate and report upon all complaints and alleged violations of laws relating to the issue and sale of securities and to represent the Department of Securities in prosecutions arising therefrom,"

which statutory duties it is argued are not the duties ascribed to Judy in the indictment; in other words, that the duties assumed by the indictment to be Judy's duties were not his official duties. Except as to the questions of venue raised, the other questions raised by the motions and demurrer have much in common, and will be discussed together.

The office or position of Assistant Chief of the Division of Securities, if it existed as charged in the indictment, was created and its duties defined not directly by the legislature itself, but by the Department of Commerce pursuant to legislative authority. The same may be said of the examiners in the department.

However, the position of Attorney-Inspector is created by §8624-44, GC, which section also purports to define the duties of said position as heretofore quoted. The Administrative Code gives to the various departments the authority to create positions within the divisions of said departments and to fix the duties of said officers and employees as hereinafter pointed out, and in the Court's opinion such duties may be fixed by the Departments or Division heads by a specific regulation or order or may be fixed and established by the custom of the Department.

As to the crime of bribery,

"It is sufficient that the duty exists by reason of natural implication from the power specifically granted y statute or by reason of the lawful custom or regulation of a department of government."

Sec. 11, Corpus Juris, Secundum, p. 846.

Sec. 154-19, GC, is, we think, sufficiently broad to authorize the Department to create either the position of Assistant Chief of the Division of Securities or of Examiner. That section provides:

"Each department is empowered to employ, subject to the Civil Service laws in force at the time the employment is made, the necessary employees, and if the rate of compensation is not otherwise fixed by law, to fix their compensation."

Since the law authorizes the creation of the positions of Assistant Chief and of Examiner, and the indictment charges in substance the existence of the said positions, their actual creation and existence become

560

facts to be proved by the State as any other fact necessary to be proved. It is really immaterial whether James Angel Bolinger was an Examiner in the Division of Securities at the time or not, since he is only charged with being an aider and abettor; and since the position of Assistant Chief may legally have been

**Headnote 8.** created the question of whether or not it was so created is not one to be reached by motion to quash or by demurrer.

. The statute, §154-8, GC, extends to the Director of the department broad powers as to the duties to be performed by such employees in the division. Said section provides in part:

"* * * The director of each department may prescribe regulations, not inconsistent with law, for the government of his department, the conduct of its employees, the performance of its business."

It is argued that by reason of §8624-2, GC, only the Director of Commerce of the Chief of the Division of Securities could grant a dealer's license or register by qualification any securities. The pertinent part of said section provides:

"The following terms shall, unless the context otherwise indicates have the following respective meanings:

"1. 'Division' or 'division or securities' **shall mean that administrative department** of the state of Ohio which shall be entrusted with the administration and enforcement of this act.

"Whenever the context requires it 'division' or 'division of securities' may be read as director of commerce or as chief of the division of securities."

. Here we have a definition, first, that "division" or "division of securities" shall mean the **administrative department** which shall be entrusted with the administration of the act, and with a further provision that **whenever the context requires it,** said terms **may** be read as director of commerce or as chief of the division.

. Taking the language as a whole and giving due regard to the first definition, and the limitations contained in the second permissive definition, to-wit: "whenever the context requires it" and the word "may", and keeping in mind the provision of §154-8 that "the director of each department may prescribe regulations not inconsistent with law for the government of his department, the conduct of its employees, the perform-

ance of its business", the Court is not of the opinion that such statutes would prohibit regulations being made,

**Headnote 9.** or legal customs adopted whereby the assistant chief would exercise and have authority to exercise the function of granting dealer's licenses and of registering securities by qualification.

Moreover, (and what follows applies to the Judy demurrer as well as to the motions to quash). the rule is stated to be:

"If an official act is induced, or sought to be induced, by a bribe, the fact that it is illegal, **or in excess of the officer's power,** jurisdiction, **or authority is no defense.** But if the act sought to be induced is so foreign to the duties of the office as to lack even color of authority, there is no bribery."
Cyclopedia Criminal Law, Vol. 2, p. 1840.

"While the decisions on the subject are not altogether in harmony, by the **great weight of authority,** the giving or receiving money, etc., for the purpose of influencing official conduct is not deprival of its criminal character by the fact that the action contemplated is **not within the officer's jurisdiction.** If he acts in his official capacity —and by this term is meant the doing of such acts as properly belong to the office and **are intended by the officer to be official** —the offense is complete.

The validity or invalidity of the act to be done or whether the officer or the body in question had or had not jurisdiction is generally immaterial. On the other hand, it is a universal principle that an offense committed in connection with an act entirely outside the official functions of the officer to whom the bribe is offered is not bribery."
8 American Jur., p. 894, and cases cited.

Further,

"A person who holds himself out as an officer under color of authority and who solicits and accepts a bribe has no right to defend and be discharged on the ground that as a matter of law he had no right to act as such officer."
Ex Parte Winters, 140 P. 164, 51 L.R.A. (N.S.) 1087.

"Deputy clerk of Probate Court, being an official, and having signed certificates for payment of clothing, held estopped, in prosecution for accepting bribe to award bribe giver contracts for purchase of clothing for patients committed to insane asylum, to claim that he did not possess authority to

award contracts."

**Roberts v State, 45 Oh Ap 65.**

In that case the Court stated at page 73 of the opinion:

"An official act does not mean what a deputy might lawfully do in the execution of his office, but means whatever was done under color or by virtue of his office."

Citing Meek v Tilghman, 55 Okl., 208.

And stated further on the same page that,

"Plaintiff in error if he solicited and accepted money upon ostensible authority to control the purchases of clothing cannot be heard to say that he did not possess such authority."

Corpus Juris states the rule:

"An official act need not, however, be lawful to render the officer liable, but need only be **official in form** and done under **color** of his office."

9 Corpus Juris, 405.

In **Foote v State, 44 Oh Ap, 224,** a bribery case, it was held:

"Principal clerk on whom municipal department superintendent relied for information regarding department employees could be convicted for soliciting and accepting the bribe from employee under promise to prevent his discharge, notwithstanding clerk did not have final say as to who should be retained or discharged."

In this case the Court referred to **Barker v State, 69 Oh St, 68,** where the Court said:

"We are quite aware that the rule of law and of this Court is that a statute defining an offense is not to be extended by construction to persons not within its descriptive terms, yet it is just as well settled that penal provisions are to be fairly construed according to the expressed legislative intent, and mere verbal nicety, or forced construction, is not to be resorted to in order to exonerate persons plainly within the terms of the statute."

In **State v Whitmore, 126 Oh St,** at page 390 of the opinion, the Court said:

"Penal laws do require a strict construction, but, if passed, should not be so construed as to destroy the obvious legislative intent."

In the foregoing case the Supreme Court held that the lower court was in error in holding that a director of a bank was not an "officer" of a bank under §710-174, GC, which is a penal section.

Said Mr. Justice Hughes, in U. S. v Birdsell, 233 U. S., 223, (Opinion, p. 230-231):

"Every action that is within the range of official duty comes within the purview of these (bribery) sections * * *. To constitute it official action it was not necessary that it should be prescribed by statute; it was sufficient that it was governed by a lawful requirement of the department under whose authority the officer was acting. Rev. Stat., 161; Benson v Henkel, 198 U. S., 1-12; Haas v Henkel, 216 U. S., 462, 480. Nor was it necessary that the requirement should be prescribed by written rule or regulation, it might also be found in an established usage which constituted the common law of the department and fixed the duties of those engaged in its activities. U. S. v McDaniel, 7 Pet., 1, 14. In numerous instances, duties not completely defined by written rules are clearly established by settled practice, and action taken in the course of their performance must be regarded as within the above mentioned statutes against bribery. Haas v Henkel, supra."

In State v Potts, 78 Ia, 656, 48 N. W., 534, the first syllabus is as follows:

"An indictment sufficiently charges the taking of a bribe which alleges that defendant, a constable, received money to release liquor seized and held by him under the law prohibiting traffic in intoxicating liquors, though it does not show that he was authorized by law to release it."

Applying these rules of law it is the view of the court that it will be a mixed question of law and fact to be determined at the trial whether the charges made in the indictment against Judy and Carney are or are not sustained, dependent on the evidence as to the extent, if at all, Judy and Carney acted, or assumed to act, officially, or color officii, or held themselves out as officers with authority or color of authority as respects the matters charged in the indictment, and also, it is a question of fact whether or not Bolinger aided and abetted Judy and Carney in the alleged unlawful acts charged against them if the acts are shown by the evidence to have been unlawful.

The first and second branches of defendant, Carney's, motion to quash, the first, second, third and fourth branches of the defendant Bolinger's motion to quash and the demurrer of the defendant Judy are each overruled. Exceptions.

The third branch of the defendant Carney's supplemental motion to quash is based on the alleged ground that,

"There is no venue in the first or third counts of the indictment relative to defendant Carney."

The fifth branch of defendant Bolinger's supplemental motion to quash was based upon the alleged ground that,

"There is no venue alleged in the third count of the indictment relative to this defendant."

The first count of the indictment finds and presents that "Edward T. Carney and Edwin Judy, late of said County (Franklin) on or about the 15th day of January, in the year of our Lord, one thousand nine hundred and thirty-five, within the County of Franklin aforesaid, were agents and employees of the Division of Securities of the State of Ohio, to-wit, * * qualified and sworn to discharge and perform the duties of said agent and employee of said Division of Securities aforesaid * * * and * * * after their appointment * * * on or about the date aforesaid * * * solicited and accepted certain valuable things * * *."

The effect of this language is to charge that Carney and Judy, late of said County of Franklin, within the County of Franklin were agents, etc., of the state; but it is not alleged that the solicitation and acceptance of the bribe took place in Franklin County, unless by a fair construction of the whole language used in the indictment, the words "within the County of Franklin" refer to everything following the said words. It will be noticed that the words "within the County of Franklin aforesaid" are followed by a comma and not by a colon. The language after the comma goes on to describe their appointment in their respective positions and to say that they were "duly and legally appointed, employed, qualified and sworn to discharge and perform the duties of said agent and employee of said Division of Securities aforesaid"; after the semicolon following the word "aforesaid" the indictment goes on to say that on or about said date they "solicited and accepted" the bribe, etc. If a colon had been used

in place of the comma, then the later semicolon would have been the proper punctuation mark to be used to denote that what preceded as well as what followed the semicolon were separate parts of a series, but the court seriously doubts whether what is described as being "within the County of Franklin", includes anything mentioned in the language following the ▮▮▮▮▮▮ semicolon. At best, an uncertainty would appear to exist as to whether the venue of the alleged offense is set forth.

In the third count Carney and Judy are described as being late "of said county", without setting forth the name of the county; and no further mention of venue is made in connection with the charge therein contained against said defendants, although when the last paragraph is reached, which charges Bolinger with being an aider and abettor, it is set forth that "Bolinger * * * in the County of Franklin, * * * did unlawfully * * * aid and abet * * * the aforesaid Edward T. Carney and the aforesaid Edwin Judy to do and commit the aforesaid crime of soliciting and accepting a bribe * * *." It would be possible (though not probable) for Bolinger to have aided and abetted in Franklin County and for the crime with which Carney and Judy are charged in the third count, to have been committed in another county. The Court is therefore of the opinion that the venue is not set ▮▮▮▮▮▮ forth with sufficient definiteness, if at all, as to Carney and Judy in the third count. The venue appears to be definite as to Bolinger.

However, the said defects in the first and third counts are not ground for sustaining the motions to quash.

Sec. 13437-27, GC provides:

"No indictment or information shall be quashed, set aside or dismissed for any one or more of the following defects;
* * *

(Third), that any uncertainty exists therein. If the Court be of the opinion that the third defect exists in the indictment or information, it may order the indictment or information to be amended to cure such defect, provided no change is to be made in the name or identity of the crime charged."

In accordance with the authority granted by said section the court orders that the first and third counts be so ▮▮▮▮▮▮ amended as to clearly set forth the venue, but the mo-

tions to quash based on said ground of the supplemental motion, are overruled.

On alternative motion of Carney for separate trials on offenses set forth in the first and second counts and on offenses set forth in the third count; and on motion of defendant Elmer William Vossler to grant him a separate trial from that of James Angel Bolinger.

The defendant Carney has moved that in the event his motion to quash be overruled, then in the alternative "that the offenses sought to be alleged in the first and second counts of the indictment be tried separately from the third count, or that the indictment be divided into two counts, the first and second counts being in one group and the third count being in another group and that each group be tried separately."

The first count in substance charges that defendants Carney and Judy on or about January 15, 1935, solicited and accepted a bribe from defendant Vossler, to influence the granting of a dealer's license to Vossler's company. The second count charges that defendant Vossler gave said bribe on said date.

The third count charges that on or about October 23rd, 1936, defendants Carney and Judy solicited and accepted a bribe from William R. Parmalee and John L. Rossell, to influence the registration by qualification of certain shares of stock in the Toledo Guaranty Corporation of Toledo, Ohio, and that the defendant Bolinger aided and abetted the said Judy and Carney.

It will thus be seen that the alleged transaction out of which grows the charges contained in the first two counts in the indictment, is entirely disconnected from and unrelated to the transaction out of which grows the charge in the third count. The evidence will of necessity be totally different. The times charged are different, and the parties involved are different in part. Moreover, a like motion as before stated has been filed by defendant Elmer William Vossler, who is perhaps in a stronger position to urge his motion than is Carney, for while Carney is a defendant in both the first and third counts charged with different and unrelated offenses, Vossler is not charged with any offense in the third count, and has no relation to, interest in, or connection with the facts and circumstances out of which such charge grows. However, if Vossler's motion is sustained, of necessity this would lead to the sustaining of Carney's like motion.

"A person accused of crime has the right to a fair and impartial trial and to be convicted on proof of his own acts, unaffected by the atmosphere of guilt that may surround another defendant tried before the same jury for a different offense."

Culjak v United States, 53 Fed. (2nd) 554, 82 A. L. R., 484.

Vossler's and Bolinger's alleged offenses are entirely unrelated; there exists no connection between them either near or remote. To grant Vossler's motion in effect requires the sustaining of this motion.

If the transaction mentioned in the first and second counts, and the transaction mentioned in the third count, were in any way connected with each other, or if the evidence to support the first two counts were in any way common with the evidence to support the third count; or if all defendants occupied a like or similar position with reference to both transactions, or if the two transactions were not widely separated in time, there would be less reason for granting the motions. As it is, the Court is of opinion, that to avoid confusion of issues and to avoid requiring Bolinger to be a participant as a defendant in a trial in which Vossler is a defendant, and vice versa, that in the interests of justice the motions should be granted. The statute, §13437-3. GC, plainly recognizes that such situations may exist. Said section provides:

"* * * The court in the interest of justice and for good cause shown, may in its discretion, order that the different offenses or counts set forth in the indictment or information to be tried separately, or divided into two or more groups and each of said groups tried separately."

Accordingly it is ordered that the counts in the indictment be divided into the two groups mentioned and each of said groups tried separately.

On motion of defendant Edwin Judy filed March 10, 1939, to require the state to furnish a more specific bill of particulars.

The statutory provision for a bill of particulars first made its appearance in the revision of the criminal code of 1929, and is contained in §13437-6, GC. That section provides:

"The following forms may be used in the cases in which they are applicable, but any other forms authorized by this or any other law of this state may also be used, and other brief and comprehensive forms applicable to other offenses may be used."

This is followed by a considerable number of "short forms" of indictment as to various crimes, no short form of indictment for bribery or soliciting a bribe, however, being included; after the listing of the various forms, the section contains the following priviso:

"Provided, that the prosecuting attorney, if reasonably requested by the defendant, or upon order of the court, shall furnish a bill of particulars setting up specifically the nature of the offense charged."

As stated by the court in **State v Whitmore, 126 Oh St** at page 386,

"The purpose of the new Criminal Code was to speed up criminal justice, without depriving an accused of any of his substantial rights",

we may add, that in our opinion, the purpose of the statute was not to require by way of indictment or bill of particulars or both, that the elements of an offense should be required to be stated in greater detail than had been required before the passage of the statute authorizing indictments by short forms.

The statute permits such short forms of indictment with the proviso just quoted, the purpose and meaning of which is, in our opinion, that the necessary detail to conform to the constitutional requirement that the essentials of the offense, that is to say, "the nature and cause of the accusation", should be supplied by bill of particulars, where the constitutional requirements as to definiteness are not all met by the indictment itself.

In other words, the statute authorizing the use of bills of particulars does not have the purpose of requiring in the indictment or in the bill of particulars or both anything more than a statement in ordinary and concise language, of the essential elements of the offense; so of course the pleading of details of evidence or the stating of legal conclusions are not required. The purpose of the New Code of Criminal Procedure is not to furnish an excuse for more verbosity or more dilatory motions, but rather the contrary.

In the said sections of the statutes no short form of indictment for bribery or soliciting of bribe is given and the form used in this case is not a short form.

What are the essential elements of bribery as that offense is defined in §12823. Said section provides:

"Whoever corruptly gives, promises or offers to a member or officer of the General Assembly, or of either House thereof, or to a state, judicial or other officer, public trustee, or an agent or employe of the state of such officer or trustee, either before or after his election, qualification, appointment or employment, any valuable thing, or corruptly offers or promises to do any act beneficial to such person to influence him with respect to his official duty, or to influence his action, vote, opinion or judgment, in a matter pending, or that might legally come before him, and whoever, being a member of the General Assembly, or a state or other officer, public trustee, agent or employe of the state or of such officer or trustee, either before or after his election, qualification, appointment or employment, solicits or accepts any valuable or beneficial thing to influence him with respect to his official duty, or to influence his action, vote, opinion or judgment, in a matter pending, or that might legally come before him, shall be imprisoned in the penitentiary not less than one year nor more than ten years."

The essential elements are as respect bribe giving:

(1) Venue; (2) corruptly giving, promising or offering; (3) any valuable thing; (4) to a state or other officer; (5) either before or after his election or appointment; (6) to influence him with respect to his official duty, or to influence his action, vote or judgment, in a matter pending, or that might legally come before him; and, (7) a statement of time of commission.

As respects solicitation or acceptance of a bribe the essential elements are, (1) Venue; (2) capacity of defendant, as a state or other officer; (3) either before or after his election or appointment; (4) corruptly solicits or accepts; (5) any valuable thing; (6) to influence him with respect to his official duty or to influence his action, vote, opinion or judgment in a matter pending, or that might legally come before him; and (7) a statement of time of commission.

Analysis of the counts of the indictment shows that all of these elements, (except venue, which is vague and in respect to which the court has ordered amendments) are set forth with particularity, and together with the bills of particulars give to the

defendant in sufficient detail all the elements of the crimes charged which are required by the statute, by the constitution and by the rules of criminal pleading. The record shows that pursuant to a request on behalf of Bolinger by letter of March 6, 1939, mailed on said date from Toledo, Ohio, a bill of particulars was filed as to Bolinger on March 9, 1939. Since said bill of particulars was filed on March 9, 1939, pursuant to said request there appears in the record a request for a bill of particulars addressed to the Prosecuting Attorney and bearing the file mark of March 14, 1939. It is not, however a motion addressed to the court. A similar situation exists as to Carney. There appears in the files a request for a bill of particulars directed to the Prosecuting Attorney, signed by the attorney for the defendant Carney and bearing the file mark of March 10, 1939. It is not a motion and it is not addressed to the court. On March 17, 1939, a bill of particulars relative to Carney was filed as to which no exceptions have yet been taken.

The motion of Judy for a more definite bill of particulars is overruled. Exceptions.

On motion of defendant Edwin Judy for an order: (1) To secure and provide said defendant the means and opportunity to be present in person and with counsel at the taking of the deposition of Mr. Leonard Easley and sundry witnesses at the Raleigh Hotel, Washington, D. C.; on the.... day of March, 1939, and

(2) To provide and secure said defendant all expenses to be necessarily incurred in the securing of such means and opportunity to take such depositions, and

(3) To grant a commission to take depositions of such witnesses whose testimony is competent, relevant and material to the trial of this cause as is evidenced by the affidavit of the undersigned, (M. L. Farber, defendant's attorney) heretofore filed, etc.

Said affidavit sets forth that the evidence sought to be secured by the deposition of Leonard Easley and sundry witnesses at the Raleigh Hotel, Washington, D. C., is competent, relevant and material to the trial of the cause and that the evidence sought thereby to be obtained is in substance as follows:

(1) Evidence relating to the unreliability, untruthfulness and dishonesty of William L. Parmalee.

(2) Evidence relating to the unreliability, untruthfulness, and improper official conduct of Dan Tyler Moore, while Chief of the Division of Securities of Ohio.

(3) Evidence relating to the activities of, statements by and the good moral character for truthfulness of James Angel Bolinger.

The statute, §13444-11, GC, provides:

"When an issue of fact is joined upon an indictment and a material witness for * * * the defendant resides out of the state * * * the defendant may apply in writing to the court for a commission to take the deposition of such witness: the court or judge may grant such commission. * * * Such commission shall not be granted * * * until there is filed with the clerk of said court, an affidavit **stating in substance the evidence sought to be secured by deposition,** and that it is competent, relevant and material, **and it shall appear to the court** that such evidence is relevant, competent and material."

In **Yunker v State, 8 Oh Ap at page 159,** the Court, in referring to this statute (formerly §13668) said:

"It appears from a reading of this section that even when an issue of fact is joined upon an indictment a **Headnote 23.** discretion is reposed in the trial court as to whether such application should or should not be granted."

The statute provides that such commission shall not be granted until there is filed, "An affidavit stating in substance the evidence sought to be secured," and "it shall appear to the court that such evidence is relevant, competent and material".

The statement in the affidavit purporting to state "in substance the evidence sought to be secured" is at best very sketchy and incomplete; the statement is "evidence relating to the unreliability, untruthfulness," etc., "of William L. Parmalee and Dan Tyler Moore, and also "evidence relating to the activities of, statements by and good moral character and reputation for truthfulness of James Angel Bolinger."

It may be, but the Court is not officially advised that either Parmalee or Moore will be witnesses for the state; nor does it appear how evidence as to the good moral character of co-defendant Bolinger will become material in the trial of Judy. The substance of what Leonard Easley and sundry witnesses would testify to is not presented in any detail, nor is any detail presented as to what opportunity Easley has had to qualify him as a witness to speak or testify as to the unreliability or untruthfulness of either Parmalee or Moore,

should they be witnesses for the state.

To authorize the expense of a trip to Washington to be taken by Judy and his attorney as well as by the Prosecuting Attorney, to be paid by the county, on such a meager showing, would appear to the Court to be unwarranted and premature. The motion will be overruled, without prejudice however to a renewal thereof, if a more adequate showing be made in the matter.

On motion of defendant Judy for an order directing the state to deliver to said defendant or his attorney a copy of any instrument of writing whereon the action is founded or which the state intends to offer in evidence at the trial, and failing which said instruments shall be excluded as evidence at the trial, the defendant heretofore having made written demand for such copies.

Sec. 13444-1, GC, provides that,

"The rules of evidence in civil cases insofar as the same are applicable, shall govern in all criminal causes except as otherwise provided in this Code."

And §11554 provides that,

"Either party, or his attorney, if required shall deliver to the other party, or his attorney, a copy of any instrument of writing whereon the action or defense is founded, or which he intends to offer in evidence at the trial. If the plaintiff or defendant refuses to furnish the copy required, the party so refusing shall not be permitted to give the original in evidence at the trial. This section does not apply to a paper, a copy of which, is required."

The Assistant Prosecuting Attorney has stated to the Court that the requirements of said §11154, GC, will be voluntarily complied with. In view of this statement no order on the motion will now be made. If, later, the said defendant should claim that the requirements of said section have not fully been complied with the motion may be renewed.

On motion of defendant Edwin Judy for an order to inspect books, papers and documents, etc.

This motion lists in 13 separate branches the books, papers and documents that defendant or his attorney desires to inspect, and is based on §§13444-1 and 11552, GC. Said latter section provides that:

"Either party, or his attorney, in writing, may demand of the adverse party an inspection and copy, or permission to take a copy of a book, paper or document in his possession, or under his control, containing **evidence relating to the merits of the action or defense,** specifying the book, paper, or document with sufficient particularly to enable the other party to distinguish it. * * *"

It will be noticed that the papers which may be thus inspected are those "containing evidence relating to the merits of the action or defense."

The Assistant Prosecuting Attorney has stated to the Court that the request for the inspection of the papers listed in branches 1 to 10, inclusive, will voluntarily be granted, as to all such papers as are in the possession of the Prosecuting Attorney. That being so no order with respect thereto will at this time be made. If after having made such inspection, defendant or his counsel claims that anything covered by branches 1 to 10 have been withheld and which "contain evidence relating to the merits of the action or defense the motion as to such may be renewed." Branches 11, 12 and 13 relate to transcripts of testimony taken by the Division of Securities in Cincinnati in March, 1938, and in Columbus in April 1938, and a transcript of testimony made to the Prosecutor in May of 1938.

It is not claimed that any of this testimony was the testimony of the defendant Judy and so none of said transcripts could be introduced in evidence on the trial of the defendant Judy; it follows that such transcripts contain no evidence dence relating to the merits of the action or defense insofar as defendant Judy is concerned. The situation with reference to these transcripts and statements differs from that alluded to in State v Fox, 133 Oh St, 158, where the court said:

"Counsel for defendants in the instant case could have inspected the written confessions of their client Barker in the hands of the Prosecuting Attorney before trial by marking the provisions of §11551, et seq., GC, if necessary * * *."

In the first place, the testimony and statements referred to are not the statements or testimony of the defendant Judy, as appears from his affidavit filed on another motion, to-wit, a motion asking to be tried separately from Vossler and Bolinger, filed March 17, 1939; and further,

Vossler and Bolinger who are alleged in said affidavit to have made the statements, are not the clients of the counsel who makes the motion on behalf of defendant Judy. Moreover these transcripts are not claimed to be written, signed confessions by any one, and said transcripts, therefore, as such, without authentication, would not be admissible in evidence against any one. If used at all, they could only be used to refresh the recollection of a witness who would personally relate what he heard.

Branches 11, 12 and 13 of the motion to inspect will be overruled.

On motion of defendant Judy for an order directing that said defendant be tried separately from Vossler and Bolinger.

This motion is based on an affidavit which stands undenied, that Vossler and Bolinger have made statements or admissions not in the presence of Judy amounting to confessions of their guilt, which are now denied by said defendants, but which involve and implicate Judy and Carney, and which, while they may not be used against Judy if introduced as against Vossler and Bolinger respectively, in a joint trial with Judy, would be prejudicial as to him, notwithstanding any instructions that might be given to the jury by the Court to the effect that such evidence would not be competent as against Judy and could be received only as against a co-defendant who had made such admissions or confessions.

On another motion the Court has already ruled that the separate and related transactions set forth in the various counts of the indictment should be divided into two groups and that they should be tried separately. Relative to this pending motion, §13442-11, GC, provides

"When two or more persons are jointly indicted for a felony, except a capital offense, they shall be tried jointly unless the court for good cause shown on application therefor by the prosecuting attorney or one or more defendants, order that one or more of said defendants be tried separately."

In **State v Fox, 133 Oh St, 154,** it was held that:

"Two or more persons, jointly indicted for a non-capital felony, must be tried jointly, under §13442-11, GC, where an application for separate trials is made but good cause therefor is not presented."

In that case before the trial, counsel for the joint defendants made a **general** motion for separate trials, assigning as the **sole ground,** "that the trial of said de-

fendants jointly will work to their individual prejudice."

Said the Court in the opinion, page 158, "Counsel * * * could have predicated an application for a separate trial of their client Fox on the basis of the contents of such confession." (The confession being that of a co-defendant Barker.) Said the Court further: "This was not done, so we have no issue relating to an abuse of discretion on the part of the trial court in refusing to order separate trials." What the holding of the Court would have been had counsel predicated the application for separate trials on the basis of the confession of the co-defendant, of course, is not known, but it would appear by implication, at least, that the question would be one for serious consideration.

Here counsel have done what the Court said might have been done in the Fox case, namely, the application is based on the basis of admissions or oral confessions made by co-defendants, and ▇▇▇ the question is would it be an abuse of discretion to deny such application on the state of the record? There is some divergence of authority on the question, but the court is impressed by the reasoning of the court in Flamme v State, 171 Wis., 501, where the court said:

"The instant case presents the peculiar situation that the offenses charged against the defendants, though different in degree, necessarily arise out of the same criminal act. The court in receiving the confession of Mabel Banker, properly held it was not competent evidence against Flamme, and so instructed the jury. Yet in the very nature of the evidence, it was considered proof of the guilt of Mabel Banker of the offense charged against her, then it inevitably followed that it proved the offense charged against Flamme. We can conceive of no mental process by which the jurors could do otherwise than so regard it, and thus necessarily prove the offense of Flamme. This clearly presents a case where the confession of a defendant, admissible against her, but not against a co-defendant, must inevitably operate to the prejudice of the latter defendant's rights. Under these circumstances a denial to grant separate trials is clearly an abuse of discretion."

The reasoning of the court just quoted would seem to be unanswerable. To same effect see People v Sweetin, 325 Ill., 245; People v Patris, 360 Ill., 596.

The motion of the defendant Judy to be tried separately from Vossler and Bolinger is sustained.